T.C. Summary Opinion 2010-78

UNITED STATES TAX COURT

DAVID CAMERON PARKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26478-08S.                    Filed June 21, 2010.

David Cameron Parker, pro se.

<u>Anne W. Bryson</u>, for respondent.

CHIECHI, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1]Hereinafter, all section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioner is liable for his taxable years 2005 and 2006 for accuracy-related penalties under section 6662(a) of $2,435.40 and $2,655.40, respectively. We must decide whether petitioner is liable for those penalties. We hold that he is.

## Background

Some of the facts have been stipulated and are so found.

Petitioner resided in Washington, D.C., at the time he filed the petition in this case.

At a time not disclosed by the record before 2005, the first year at issue, petitioner, who has a bachelor of science degree in business administration, worked for 17 years for the Federal Deposit Insurance Corporation (FDIC).

After he stopped working for the FDIC, petitioner worked as an independent contractor for the U.S. Agency for International Development (AID) and the Office of Technical Assistance of the U.S. Department of the Treasury (Treasury's Office of Technical Assistance). His responsibilities in that work included providing advice regarding problem bank resolution and deposit insurance.

As of 2005, petitioner had approximately 20 years of experience in problem bank resolution and deposit insurance and viewed himself as an expert in those areas. Having worked extensively in the areas of problem bank resolution and deposit insurance,

petitioner was familiar with the regulatory regimes relating to banking and other financial services industries.

Immediately after working as an independent contractor for AID and Treasury's Office of Technical Assistance, petitioner began working for the International Monetary Fund (IMF). By letter dated June 9, 2005 (IMF June 9, 2005 letter), the IMF offered petitioner a contractual appointment as a headquarters-based technical assistance advisor in the Monetary and Financial Systems Department of the IMF that was to begin on May 25, 2005, and to end on May 24, 2007.[2] Petitioner accepted that appointment. From May 25, 2005, through 2006, petitioner earned gross annual compensation of approximately $175,000 while working as a headquarters-based technical assistance advisor in the IMF's Monetary and Financial Systems Department.

Petitioner's work experience before and during the years at issue included his consulting different publications, manuals, and procedures promulgated by the different regulators of the different financial services industries with which he worked in order to attempt to resolve certain issues that he encountered.

The IMF sent, and petitioner received, Form W-2, Wage and Tax Statement (Form W-2), for his taxable year 2005. The IMF indicated in that form that it had not withheld Federal income

---

[2]The IMF June 9, 2005 letter superseded an IMF letter to petitioner dated May 18, 2005.

tax or Social Security tax from the earnings that petitioner had received from the IMF during 2005.

Petitioner timely filed Form 1040A, U.S. Individual Income Tax Return, for his taxable year 2005 (2005 return). Petitioner used certain tax preparation software known as TurboTax in preparing that return.[3] At all relevant times, including when he filed his 2005 return, petitioner was aware that the IMF had not withheld Federal income tax or Social Security tax from the earnings that he had received from the IMF during 2005 and that he had an obligation to report and to pay self-employment tax because the IMF had not withheld any Social Security tax for that year. Nonetheless, petitioner did not report any self-employment tax in his 2005 return.[4] In petitioner's 2005 return, petitioner reported tax of $20,212 and tax due of $5,172.[5]

Around December 2006, the IMF announced by email to those persons working for it that the Internal Revenue Service (IRS)

---

[3]Petitioner indicated in his 2005 return that that return was "Self-Prepared".

[4]Petitioner included with his 2005 return Form 2210, Under-payment of Estimated Tax by Individuals, Estates, and Trusts. In Part I of that form, petitioner made no entry on line 2 for "Other taxes, including self-employment tax". Petitioner also included with his 2005 return Schedule AI--Annualized Income Installment Method. In that schedule, petitioner made no entry in Part I, line 13, for "Self-employment tax".

[5]Petitioner reduced the $20,212 of tax reported in his 2005 return by "2005 estimated tax payments and amounts applied from 2004 return" of $15,040.

had made a settlement initiative (IRS settlement initiative) available for employees at foreign embassies, foreign consulate offices, and international organizations in the United States.

By letter to the IRS dated January 24, 2007 (petitioner's January 24, 2007 letter), petitioner made a request to participate in the IRS settlement initiative for his taxable year 2005. In that letter, petitioner stated in pertinent part:

> Consider this my Notice of Election in the subject [IRS] Settlement Initiative.  I have worked for the International Monetary Fund since May, 2005, and am afraid that I may not have paid Social Security taxes.
>
>    *       *       *       *       *       *       *
>
> * * * I am enclosing copies of my original tax returns [sic] filed for the year 2005 (this return was not amended).  Employer earnings statements for 2005 accompany this tax return.

By letter to petitioner dated April 6, 2007 (IRS April 6, 2007 letter), the IRS accepted petitioner's request to participate in the IRS settlement initiative for his taxable year 2005. In that letter, the IRS requested additional information in order to complete its review of petitioner's request.  The IRS April 6, 2007 letter stated in pertinent part:

> You will be contacted shortly by an examiner to discuss your particular situation.
>
> Once we have completed our review of the documents you submitted and computed the total taxes, interest, and penalties owed, we will send a closing agreement for your signature which reflects the terms of the settlement.

Shortly after petitioner sent the IRS petitioner's January 24, 2007 letter in which he made a request to participate in the IRS settlement initiative for his taxable year 2005, the IMF sent to petitioner, and petitioner received, Form W-2 for his taxable year 2006. The IMF indicated in that form that the IMF had not withheld Federal income tax or Social Security tax from the earnings that petitioner had received from the IMF during 2006.

Approximately a few months after petitioner sent the IRS petitioner's January 24, 2007 letter in which he made a request to participate in the IRS settlement initiative for his taxable year 2005, petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for his taxable year 2006 (2006 return). Petitioner did not review that return very closely before filing it. Petitioner used TurboTax in preparing his 2006 return.[6] At all relevant times, including when he filed his 2006 return, petitioner was aware that the IMF had not withheld Federal income tax or Social Security tax from the earnings that he had received from the IMF during 2006 and that he had an obligation to report and to pay self-employment tax because the IMF had not withheld any Social Security tax for that year. Nonetheless, petitioner did not report any self-employment tax in his 2006 return. In

_____

[6]Petitioner indicated in his 2006 return that that return was "Self-Prepared."

petitioner's 2006 return, petitioner reported tax of $39,673 and tax due of $19,421.[7]

Except for reviewing certain of the IRS instructions accompanying the respective Federal income tax returns that he prepared and filed for his taxable years 2005 and 2006, petitioner did not consult any publicly available IRS publications or IRS guidance when he was preparing his 2005 return and his 2006 return.

By letter dated November 27, 2007 (IRS November 27, 2007 letter), the IRS notified petitioner that it was examining his 2006 return. In the IRS November 27, 2007 letter, the IRS asked petitioner to provide it with certain information relating to certain deductions that petitioner claimed in Schedule A, Itemized Deductions, that he had included with his 2006 return.

By letter dated December 18, 2007 (IMF December 18, 2007 letter), the finance department of the IMF provided petitioner with certain information regarding his compensation for 2005. That letter stated in pertinent part:

> As reported on Form W-2, your 2005 compensation from the International Monetary Fund was $110,867.11. This amount should be included as wages on the Form 1040, line 7 of your 2005 federal income tax return and, unless earned outside the United States, is subject to self-employment tax [under sections 1402(a), 1402(c)(2)(C), and 3121(1)(15)].

---

[7]Petitioner reduced the $39,673 of tax reported in his 2006 return by "2006 estimated tax payments and amounts applied from 2005 return" of $20,212 and a certain credit of $40.

The IMF December 18, 2007 letter also explained and calculated for petitioner how to determine the portion of his compensation that he had earned outside the United States during 2005.

On December 19, 2007, the IMF December 18, 2007 letter was faxed to respondent along with a proposed amended return of petitioner for his taxable year 2005. By letter dated December 20, 2007 (IRS December 20, 2007 letter), the IRS informed petitioner about the changes made under the IRS settlement initiative for his taxable year 2005 and enclosed with that letter a copy of Form 906-C, Closing Agreement on Final Determination Covering Specific Matters (closing agreement), which reflected the settlement agreement under the IRS settlement initiative between the IRS and petitioner with respect to that year.

Petitioner declined to agree to the settlement under the IRS settlement initiative with respect to his taxable year 2005 and did not sign the closing agreement that the IRS sent to him with the IRS December 20, 2007 letter. By letter dated January 8, 2008, petitioner withdrew from the IRS settlement initiative (petitioner's January 8, 2008 letter) for his taxable year 2005. Petitioner included with that letter proposed amended returns for his respective taxable years 2005 and 2006. In petitioner's January 8, 2008 letter, petitioner stated in pertinent part:

> I am a contractual employee with the International
> Monetary Fund (IMF). IMF provides a W2 to me but does
> not withhold any federal income or social security
> taxes. In late 2006, a settlement initiative was

announced for US citizen employees of international organizations who may have underpaid or miscalculated taxes.

* * * For tax years 2005 and 2006, I calculated my own taxes using the computer program TurboTax. Because I had a little uncertainty whether TurboTax had made proper calculations, I entered the settlement initiative in January, 2007.

As it turned out, TurboTax had provided erroneous information to me, to wit, that the social security taxes were included in my taxes due (see Attachment 1).[8] Subsequently, I engaged a tax specialist to examine and re-calculate my 2005 and 2006 income tax returns and determine any additional taxes due.

Last week, Ms. Shana Hart of your office informed me that because I only had one year of employment with an international organization (2005) the settlement initiative would not benefit me.

Ms. Hart further informed me that if I withdrew from the initiative she would be handling examination of my tax returns. To that end, I have enclosed my amended tax return for 2005, along with a check in the amount of $13,985 ($12,177 tax and $1,808 interest through January 16, 2008). Please note that this amended return differs slightly from the one I faxed previously because of a clerical error on the 2005 Self Employment Income memorandum (the tax is a bit higher).

Previously, Ms. Hart had requested my tax return for 2006. I assume that she is also handling the examination for this return; therefore, I have also enclosed my amended tax return for 2006, along with a check in the amount of $14,105 ($13,277 tax and $828 interest through January 16, 2008).

Since this is a voluntary action on my part I would like to respectfully request that you waive any additional penalties in conjunction with the underpayments.

---

[8]The record does not contain any document that purports to be "Attachment 1" to petitioner's January 8, 2008 letter.

The proposed amended return for petitioner's taxable year 2005 that petitioner submitted with petitioner's January 8, 2008 letter reported an increase in tax of $12,177. The proposed amended return for petitioner's taxable year 2006 that he included with that letter reported an increase in tax of $13,277. As stated in petitioner's January 8, 2008 letter, petitioner included with that letter two checks for $13,985 and $14,105, respectively, in payment of the respective increases in tax reported in his proposed amended returns for his taxable years 2005 and 2006, as well as interest thereon as provided by law.[9]

By letter dated January 16, 2008, respondent confirmed petitioner's withdrawal from the IRS settlement initiative for his taxable year 2005.

Respondent issued to petitioner a notice of deficiency for his taxable years 2005 and 2006. In that notice, respondent determined that petitioner is liable for his taxable years 2005 and 2006 for accuracy-related penalties under section 6662(a) of $2,435.40 and $2,655.40, respectively.

## Discussion

It is respondent's position that petitioner is liable for each of his taxable years 2005 and 2006 for the accuracy-related

---

[9]For his taxable year 2005, petitioner paid an increase in tax of $12,177 and interest thereon of $1,808 through Jan. 16, 2008. For his taxable year 2006, petitioner paid an increase in tax of $13,277 and interest thereon of $828 through Jan. 16, 2008.

penalty under section 6662(a) because of a substantial under-statement of income tax (substantial understatement) under section 6662(b)(2) for each of those years.

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment attributable to, inter alia, a substantial understatement under section 6662(b)(2).  For purposes of section 6662(b)(2), an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of the tax shown in the tax return, sec. 6662(d)(2)(A), and is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown in the return or $5,000, sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion.  Sec. 6664(c)(1).  The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess such taxpayer's proper tax liability, the knowledge and the experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional does not necessarily demonstrate reasonable cause and good faith unless, under all the

circumstances, such reliance was reasonable and the taxpayer acted in good faith. Id. In this connection, a taxpayer must demonstrate that the taxpayer's reliance on the advice of a professional was objectively reasonable. Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), affg. T.C. Memo. 1993-480. A taxpayer's reliance on the advice of a professional will be objectively reasonable only if the taxpayer has provided necessary and accurate information to the professional. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); see also Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978). Tax preparation software, like TurboTax, "is only as good as the information one inputs into it." Bunney v. Commissioner, 114 T.C. 259, 267 (2000).

Respondent has the burden of production under section 7491(c) with respect to the accuracy-related penalties at issue. To meet that burden, respondent must come forward with sufficient evidence showing that it is appropriate to impose those penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Although respondent bears the burden of production with respect to the accuracy-related penalties at issue, respondent "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions. * * * the taxpayer bears the burden of proof with regard those issues." Id.

On the record before us, we find that there is a substantial understatement for each of petitioner's taxable years 2005 and 2006. On that record, we further find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a) that respondent determined for each of those years.

It is petitioner's position that the accuracy-related penalties at issue "should be waived." In support of that position, petitioner asserts:

> During the period under question I worked as a contractual employee with the International Monetary Fund (IMF). Because I was a contractual employee, IMF provided a W2 to me but did not withhold any federal income or social security (FICA) taxes. * * *
>
> For tax years 2005 and 2006, I calculated my own taxes using the computer program TurboTax. I even paid extra for the opportunity to specifically ask TurboTax professionals if FICA taxes were included in the tax computations they did for me. These representatives assured me that all the taxes were included (Exhibit A).[10]
>
> * * * Although I believed that I had paid all taxes due, because I had never filed in this capacity (self-employed), I was a little uncertain about whether TurboTax's calculations included the self employment taxes, so I entered the IRS settlement initiative in January, 2007.

---

[10]Petitioner attached to his brief a document that is not part of the record in this case and that he labeled "Exhibit A". The Court had that document (as well as another document that he attached to his brief as an exhibit) returned to petitioner. See Rule 151(e)(3). Moreover, unsupported statements in briefs do not constitute evidence. Rule 143(c).

As it turned out, TurboTax representatives were wrong; the social security taxes were not included in the tax computations they did for me. Then, I engaged a tax specialist to examine and re-calculate my 2005 and 2006 income tax returns and determine any additional taxes due.

* * * I then withdrew from the [IRS] settlement initiative and filed my amended returns along with payment of taxes and interest due. This resulted in total payments of $32,389 plus $1,808 interest for 2005 and $52,950 plus $828 interest for 2006.

Because I had initiated contact with the IRS and voluntarily come forward with the problem, I respectfully requested that the IRS waive any additional penalties in conjunction with the underpayments. The IRS, despite my complete cooperation with all their information demands, refused my request and insisted on payment of penalties of $2,435.40 for 2005 and $3,655.40 [sic] for 2006.

   *       *       *       *       *       *       *

According to I.R.C. § 6664(c) the accuracy related penalty "will not apply where the taxpayer can show reasonable cause for the understatement and action in good faith". I voluntarily made the effort to comply with the tax laws; and paid all my federal taxes and interest due. I acted in good faith throughout this process and believe that I had reasonable cause for my understatement and actions.

We turn first to petitioner's claim that he "had reasonable cause" within the meaning of section 6664(c)(1) for his respective underpayments for his taxable years 2005 and 2006 because he relied on TurboTax. At the respective times petitioner filed his 2005 return and his 2006 return he knew that he was responsible for self-employment tax.[11] Nonetheless, neither his 2005 return

---

[11]The respective Forms W-2 that the IMF provided to peti-
                                          (continued...)

nor his 2006 return reported any self-employment tax.  On the record before us, we reject petitioner's claimed reliance on TurboTax.

We turn next to petitioner's claim that he "had reasonable cause" within the meaning of section 6664(c)(1) for his respective underpayments for his taxable years 2005 and 2006 because he relied on certain unidentified "TurboTax experts".  We do not find credible petitioner's claim that any such "experts" told him that self-employment tax was included in the computation of petitioner's tax in his 2006 return[12] when that return itself did not report any self-employment tax.  On the record before us, we reject petitioner's claimed reliance on certain unidentified "TurboTax experts".

We turn finally to petitioner's claim that he acted "in good faith" within the meaning of section 6664(c)(1) because after he filed his 2005 return and his 2006 return he "initiated contact with the IRS and voluntarily * * *[came] forward" regarding his respective self-employment taxes for his taxable years 2005 and

---

[11](...continued)
tioner for his taxable years 2005 and 2006 indicated that no Federal income taxes or Social Security taxes had been withheld for those years.

[12]Petitioner's unsupported assertion on brief that he consulted "TurboTax experts" when he was preparing both his 2005 return and his 2006 return is inconsistent with his testimony in which he claimed that it was only in connection with his preparation of his 2006 return that he "paid extra to ask * * * specific questions about my return."

2006 and "paid all my federal taxes and interest due" for those years. That claim suggests that petitioner believes that his actions after he filed his 2005 return and his 2006 return require the Court to find that he acted in good faith within the meaning of section 6664(c)(1) with respect to the underpayment in each of those returns. Any such belief is wrong. The determination under section 6664(c)(1) as to whether there was reasonable cause for, and whether the taxpayer acted in good faith with respect to, any portion of an underpayment is made by examining any action or inaction of the taxpayer before, and at the time of, the filing of the return with respect to which there is an underpayment. On the record before us, we reject petitioner's claimed reliance on his actions after he filed his 2005 return and his 2006 return.

At the times petitioner filed his 2005 return and his 2006 return he was aware that he was responsible for self-employment taxes on the respective earnings that he had received from the IMF during 2005 and 2006 and that the IMF had not withheld Federal income taxes or Social Security taxes with respect to those earnings.[13] On the record before us, we reject as not credible petitioner's testimony that he was uncertain as to whether he had included self-employment taxes in his 2005 return

---

[13]At the times petitioner filed his 2005 return and his 2006 return he knew that he was required to report and to pay self-employment taxes.

and his 2006 return.  When he filed those returns petitioner knew, or certainly should have known by reviewing those returns, that he had not reported self-employment taxes therein.  That is because those returns did not report any self-employment taxes.[14]

On the record before us, we find that petitioner has failed to carry his burden of establishing that there was reasonable cause for, and that he acted in good faith with respect to, any portion of the underpayment for each of his taxable years 2005 and 2006.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry his burden of establishing that he is not liable for each of his taxable years 2005 and 2006 for the accuracy-related penalty under section 6662(a).

---

[14]Petitioner acknowledged at trial that he did not review his 2006 return very closely before filing it.

Petitioner filed Form 1040A for his taxable year 2005 and Form 1040 for his taxable year 2006.  Without deciding whether petitioner should have filed Form 1040, instead of Form 1040A, for his taxable year 2005 when he was required to report and to pay self-employment tax for that year, we note that his 2005 Form 1040A included Form 2210, Underpayment of Estimated Tax by Individuals, Estates, and Trusts.  In Part I of that form, petitioner made no entry on line 2 for "Other taxes, including self-employment tax".  Petitioner also included with his 2005 Form 1040A Schedule AI--Annualized Income Installment Method.  In that schedule, petitioner made no entry in Part I, line 13, for "Self-employment tax".

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[15]

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[15]We shall address briefly petitioner's contention that the IRS granted "favorable treatment" in a case involving U.S. Secretary of the Treasury Timothy Geithner, which petitioner described as "incredibly similar" to the instant case. According to petitioner, "there should not be different, or favorable rules for the well-connected". The record in this case does not establish any facts relating to the case to which petitioner refers involving U.S. Secretary of the Treasury Timothy Geithner. In any event, those facts would be irrelevant to our resolution of the issue presented here. Regardless of the facts and circumstances relating to the case to which petitioner refers involving U.S. Secretary of the Treasury Timothy Geithner, petitioner is required to establish on the basis of the facts and circumstances that are established by the record in his own case that there was reasonable cause for, and that he acted in good faith with respect to, the underpayment for each of his taxable years 2005 and 2006 that is attributable to his failure to report self-employment tax. See <u>3K Inv. Partners v. Commissioner</u>, 133 T.C. ___, ___ (2009) (slip op. at 8) (citing <u>Avedisian v. Commissioner</u>, T.C. Memo. 1987-176); see also <u>IBM Corp. v. United States</u>, 170 Ct. Cl. 357, 365, 343 F.2d 914, 919 (1965).