T.C. Memo. 2013-90

UNITED STATES TAX COURT

THORNELL JOHNSON AND NICOLE SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25660-09.                    Filed April 2, 2013.

Thornell Johnson and Nicole Smith, pro sese.

<u>Jonathan M. Hauck</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent in this case (the IRS) issued a notice of

deficiency to petitioners Mr. Thornell Johnson and Ms. Nicole Smith,[1] for the 2007

tax year.  In the notice the IRS determined a deficiency of $10,830 and a

_____

[1]Smith's name at the time of the sending of the notice was Nicole Johnson.

[*2] section 6662(a)[2] accuracy-related penalty of $2,150.80.  Johnson and Smith

timely filed a petition under section 6213(a) requesting that we redetermine the

deficiency and the penalty.  We have jurisdiction under section 6214.

After concessions,[3] the issues for decision are:

(1)    Was the notice of deficiency itself fatally deficient?

(2)    Did Johnson and/or Smith receive unreported income, and, if so, how

much?

(3)    Are Johnson and Smith entitled to deductions for business expenses

reported on Schedule C, Profit or Loss from Business, related to

business use of their home; specifically, for rent, repairs, and utilities?

(4)    Are Johnson and Smith entitled to deductions for Schedule C

business expenses related to travel?

(5)    Are Johnson and Smith entitled to deductions for Schedule C

business expenses for meals and entertainment?

---

[2]All section references are to the Internal Revenue Code as in effect for the
year at issue. Rule references are to the Tax Court Rules of Practice and Procedure.

[3]The parties filed a stipulation of settled issues before trial.  Also, Johnson
conceded at trial that he was entitled to no more than $5,100 in deductions for rent
expenses attributable to his business.

**[*3]** (6)    Are Johnson and Smith liable for an accuracy-related penalty under

section 6662(a)?

FINDINGS OF FACT

Before trial all three parties--Johnson, Smith, and the IRS--signed a

stipulation of settled issues.  On the day of trial, Johnson and the IRS signed the

stipulation of facts.  Smith did not sign the stipulation of facts or appear for trial.

We adopt the stipulation of settled issues and the stipulation of facts.

Thornell Johnson and Nicole Smith were married during the entire calendar

year 2007, the tax year at issue.  They have since divorced, and at the time of filing

lived separately, Johnson in Accokeek, Maryland, and Smith in Silver Spring,

Maryland.

Smith earned $3,496 in wage income from the Washington Post Co. during

2007.  Johnson earned $4,207 in wage income from a company referred to in the

stipulation as "Mortgasestar, Inc."[4] in 2007, and he also operated a business as a

self-employed tax preparer.  As part of this work, Johnson prepared tax returns for

---

[4]The notice of deficiency, the stipulations, and the IRS's briefs all refer to Johnson's employer as "Mortgasestar, Inc."  We (somewhat begrudgingly) adopt the spelling here because that is the name which the parties have stipulated, but note that "Mortgagestar, Inc."--a spelling that appears in an IRS request for admissions-- is almost certainly what the parties meant.

[*4] clients who operated businesses requiring the Schedule C. He was familiar with the IRS's recordkeeping requirements for businesses that filed a Schedule C.

Johnson conducted this work out of the family residences. Permanently living with Johnson and Smith at the residences were three of Johnson's children. Two more of Johnson's children stayed with them every other weekend. From January through April 2007, Johnson and Smith lived together in a rented 1,144-square-foot duplex home (first residence). Johnson and Smith rented the first residence for at least $1,700 per month, which they paid through online transfer payments to their landlord, Oliviera Homes. Johnson's tax-return-preparation office was on the bottom floor. Johnson usually prepared his clients' taxes while they waited.

At or around the end of April 2007, Johnson and Smith moved to a different home (second residence), where they lived for the remainder of the year. The second residence is 3,600 square feet in area. Johnson continued to prepare tax returns in the second residence.

Johnson maintained a bank account at M&T Bank during 2007 and introduced M&T bank statements that contained entries for his expenses. Neither the bank statements nor any of Johnson's records separated personal and family expenses from business expenses.

[**\*5**]   During the year, Johnson's expenses as listed in the statements include payments to various restaurants, several utilities, travel ticket vendors and hotels, and Baltimore-Washington International Airport.  On or around January 17, 2007, he wrote a check, No. 0055, for $3,570.  The bank statement does not reflect the identity of the payee of this check (or other checks).

Johnson and Smith elected joint filing status for 2007, and they filed timely.  On their tax return,[5] Johnson and Smith did not report any wage income from Mortgasestar, Inc., or the Washington Post Co.  They claimed the following deductions on the Schedule C for Johnson's tax-return-preparation business:

- $23,560 for rent for business use of the home;

- $4,034 for utilities expenses;

- $4,232 for meals and entertainment expenses; and

- $7,693 in travel expenses.[6]

---

[5]The record does not contain a copy of petitioners' 2007 income tax return. Information described herein as being from the return is based on the parties' stipulations, the notice of deficiency, and IRS transcripts of the Johnsons' account, which are in evidence.

[6]The Schedule C reported $214,971 of gross receipts.  This aspect of the Schedule C is not challenged by the IRS.

**[\*6]**  The notice of deficiency disallowed all of the deductions in full and added

$7,703 to Johnson's and Smith's wage income.[7]  Johnson and Smith timely filed a

petition for redetermination of the resulting deficiency.

## OPINION

In deficiency proceedings before the Tax Court, the burden of proof generally

rests with the taxpayer.  Rule 142(a)(1).  Section 7491 shifts the burden of proof to

the IRS with respect to a given factual issue where a taxpayer (1) introduces credible

evidence with respect to that issue, (2) meets all applicable substantiation

requirements, (3) complies with all recordkeeping requirements, and (4) cooperates

with any reasonable requests for information.  Sec. 7491(a); Higbee v.

Commissioner, 116 T.C. 438, 440-441 (2001).  Johnson and Smith do not claim that

the burden should shift to the IRS, and the record reflects that they did not meet their

requirements of recordkeeping and substantiation.  Thus, the burden of proof remains

on Johnson and Smith.

1.    The role of petitioner Smith

On January 19, 2011, Smith requested innocent spouse relief from the IRS.

That request was resolved in a stipulation of settled issues, the terms of which are:

---

[7]Some other adjustments were made, but they were all computational.

[*7]  • Johnson alone would be responsible for any increases in tax resulting from the Schedule-C-business deductions he claimed;

• Johnson alone would be responsible for increases in tax resulting from any addition to taxable income arising from his wage income from Mortgasestar, Inc.; and

• Smith alone would be responsible for increases in tax resulting from any addition to taxable income arising from her wage income from the Washington Post Co.[8]

Smith did not attend the trial. At trial, the IRS moved to dismiss the case with respect to Smith for lack of prosecution except to the extent that the agreement in the stipulation of settled issues applied to her. See Rule 123(b). We granted the motion. The IRS asserts that Smith did not report $3,496 in wages from the Washington Post Co. Because the case with respect to Smith has been dismissed for lack of prosecution, we hold that $3,496 should be added to Johnson and Smith's gross income. Under the stipulation of settled issues, Smith will be responsible for the corresponding tax increase.

_____

[8]Johnson and Smith also agreed to split the responsibility for mutual or joint adjustments, if any, in the same proportion as their respective shares of their total adjusted gross income.

**[\*8]** 2.          The validity of the notice of deficiency

Johnson[9] has attacked the validity of the notice of deficiency on two theories. First, he alleges that this notice is invalid because he claims that the IRS issued a prior notice of deficiency that is inconsistent with the notice of deficiency that he has petitioned.  We need not decide whether Johnson received more than one notice, because even if he did, the IRS is free to send multiple notices until the taxpayer petitions this Court to redetermine a deficiency determined in any notice.  See sec. 6212(c); Gmelin v. Commissioner, T.C. Memo. 1988-338, 1988 Tax Ct. Memo LEXIS 366, at \*36, aff'd without published opinion, 891 F.2d 280 (3d Cir. 1989). Sending a second notice after a first does not on its own render the second notice invalid.

Second, Johnson alleges that the notice is invalid because, he says, the IRS sent it for improper reasons.  He alleges that the notice was sent to retaliate against him after he accompanied a tax-return-preparation client to a negotiation with an IRS agent and participated in the negotiation.  Johnson claims that tempers flared on both sides and that the IRS agent, angry at Johnson, retaliated by auditing

_____

[9]Because the case with respect to Smith is discussed in part 1, we refer to Johnson alone rather than to Johnson and Smith in the remainder of the opinion.

**[\*9]** Johnson's own tax return for the 2007 tax year. Johnson claimed this "arbitrary and erroneous" action "violated [his] rights".

It could be that all of this is true. But under the rule of Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974), we do not normally "look behind" the notice of deficiency by examining the internal process the IRS used to generate it. Such an examination is usually unnecessary because we determine a taxpayer's liability on the merits for ourselves rather than relying on any administrative record. Jackson v. Commissioner, 73 T.C. 394, 400 (1979). We sometimes make an exception and look behind the notice only in the narrow circumstance in which a constitutional right of the taxpayer has been violated. See Suarez v. Commissioner, 58 T.C. 792, 813-814 (1972) (looking behind notice of deficiency appropriate if notice based on evidence seized in violation of Fourth Amendment). Johnson has not claimed any specific constitutional violation, and nothing in the record even hints that one took place here. Thus, we follow the rule of Greenberg's Express and decline to examine the process the IRS used to create the notice.

We therefore hold that the notice of deficiency was valid. We now turn to examining the income and deduction items in question to determine Johnson's correct tax liability.

**[*10]** 3. <u>Unreported wage income</u>

In the notice of deficiency, the IRS determined that Johnson had earned $4,207 in wage income from Mortgasestar, Inc., that he did not report on his tax return. On January 6, 2011, after Johnson and Smith filed their petition in this case, the IRS made a request for admissions under Rule 90(a) which included the following: "Petitioner Thornell Johnson earned wage income from Mortgagestar Inc. during the taxable year 2007 in the amount of $4,207.00." Rule 90(c) provides that a requested admission is deemed admitted unless the party receiving the request for admission files an answer or objection to it within 30 days. Johnson did not file an answer or objection. Therefore the requested admission is deemed admitted. We hold that Johnson is deemed to have admitted receiving $4,207 in unreported wage income in 2007.

4. <u>Schedule C business deductions for business use of the home</u>

Section 162(a) provides that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Taxpayers are required to maintain records sufficient to establish the amounts of allowable deductions and to enable the Commissioner to determine the correct tax liability. Sec. 6001; <u>Shea v.</u>

**[*11]** <u>Commissioner</u>, 112 T.C. 183, 186 (1999). No deduction is allowed for personal, living, or family expenses. Sec. 262(a).

Section 280A(a) provides that for individual taxpayers "no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Section 280A(c) contains an exception to section 280A(a). It provides: "Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis * * * (A) as the principal place of business for any trade or business of the taxpayer". For an expense related to a dwelling unit to fit within the exception, some portion of the dwelling unit must be used exclusively for business. <u>See</u> <u>Sam Goldberger, Inc. v. Commissioner</u>, 88 T.C. 1532, 1557 (1987).

Johnson asserts that he is entitled to three types of expenses related to his dwelling units: a portion of $5,100 in rent for his first residence;[10] a $3,570 drywall-hanging expense for his first residence;[11] and a portion of $4,034 in

---

[10]Johnson originally claimed on his tax return a deduction of $23,560 for rent. However, he conceded at trial that he was entitled to a deduction of only $5,100 for rent corresponding to three months of rent for his first residence.

[11]Johnson testified that he wrote a check to someone--he did not identify a payee or produce a copy of the check--for $3,570 for the cost of hanging drywall in

(continued...)

[*12] utilities expenses for each residence.  None of these expenses are allowable.  Johnson has failed to demonstrate that any portion of either residence was used exclusively for business.

Johnson described the first residence as a duplex of 1,144 square feet.  He explained the layout in some detail.  The entrance to the home was on the ground floor, and immediately inside the door a set of steps led upstairs and another set led downstairs.  The family lived in the upstairs area.  His office, he said, occupied the entire bottom floor of the house.  The bottom floor, he said, made up 50% of the square footage of the house.  Thus, he suggested that it was appropriate to allocate 50% of his expenses to his home office.  His description was detailed and potentially credible on its face.  However, we do not believe that the bottom floor of the house was used exclusively for Johnson's tax-return-preparation business.  The maximum possible size of the part of the house Johnson claimed he and his family actually occupied as a residence--the top floor--is 572 square feet.  This must be true if, as Johnson testified, half of the 1,144-square-foot duplex was used

---

[11](...continued)
his basement so that it could be used as a home office.  We are persuaded from the testimony and the bank statement that a payment was made.  However, he has not proven that the $3,570 was spent on drywall.  Unless we know what the payment was for, we cannot determine whether it was a business expense.  We do not consider the question of whether the expense should be capitalized because Johnson has not shown what the payment was for.

**[\*13]** exclusively for his business. But considering the size of the family--Johnson, Smith, three children on a permanent basis, and two more children on some weekends--it does not seem likely that the bottom floor was not used for living purposes. We are not required to accept a taxpayer's self-serving and unsupported testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). If Johnson had been a credible witness on other issues, and if on this issue he had testified in detail about the family's living arrangements and explained their circumstances, or provided some corroborating evidence such as photos or a floor plan, we might have believed him. As it is, we do not. Since Johnson has not proven that he used any part of the home exclusively for his business, we cannot allow him any deduction for rent expenses attributable to his home office in his first residence.

For the second residence, Johnson testified that he used one room as "dedicated office." He testified that the area of the room was 7.8% of the 3,600-square-foot area of the house. But he provided no further information at all about the second residence. Under the circumstances, Johnson's vague testimony that one room was a "dedicated office" is not enough for Johnson to meet his burden of proving that any part of the second residence was exclusively used for business.

**[\*14]** Since we do not find that Johnson used any part of either of his residences exclusively for business, we cannot allow any deduction for utilities for that business.

5.      Other Schedule C business deductions

Certain expenses described in section 274 are subject to strict substantiation rules.  No deduction shall be allowed for, among other things, traveling expenses, entertainment expenses, gifts, and expenses with respect to "listed property" defined in section 280F(d)(4) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) the amount of the expense or other item; (2) the time and place of the travel, entertainment or use, or date and description of the gift; (3) the business purpose of the expense or other item; and (4) in the case of entertainment or gifts, the business relationship to the taxpayer of the recipients or persons entertained.  Sec. 274(d).

**[*15]** a.       Meals and entertainment

The strict substantiation requirements of section 274 apply to meals and entertainment expenses.[12]  The IRS did not allow any deduction for meals and entertainment in the notice of deficiency.

Johnson claimed $4,232 in deductions for meals and entertainment. However, in the stipulation of facts the parties agreed to the admission of Exhibit 4-P, a list of "Schedule C" meals-and-entertainment expenses totaling $2,091.27 ($1,728.27 for food; $363 for entertainment).  The stipulation contains the following statement (paragraph 16) regarding the significance of Exhibit 4-P:

> On November 18, 2011, petitioner Thornell Johnson provided computerized documents to respondent as additional substantiation and clarification of his claimed expenses.  Attached for the Court's convenience as Exhibit 4-P is a copy of petitioner Thornell Johnson's computerized documents.  Respondent does not stipulate that Exhibit 4-P is legally sufficient substantiation, nor does respondent stipulate that the expenses that are shown with 4-P were incurred for a business purpose or as ordinary or necessary expenses in 2007.

---

[12]Strict substantiation rules apply to "any item with respect to an activity which is of a type generally considered to constitute entertainment".  Sec. 274(d)(2). The term "entertainment" is defined to include "providing food and beverages". Sec. 1.274-2(b)(1)(i), Income Tax Regs.

[*16] We believe that by agreeing to paragraph 16 Johnson meant to narrow his claim for meals-and-entertainment expenses to the $2,091.27 amount listed in Exhibit 4-P.[13]

The question before us is whether Exhibit 4-P, combined with the other evidence in the record, is sufficient to meet the strict substantiation requirements. Each entry on Exhibit 4-P contains information that is found in the bank statements, which are also in the record. In his testimony, Johnson explained that the food expenses listed in Exhibit 4-P were for food to be consumed by clients while they waited for Johnson to prepare their tax returns. However, neither Exhibit 4-P nor the bank statements substantiate Johnson's testimony that the food was for client consumption. The bank statements contain only the amounts, dates, and names of payees, such as Domino's Pizza and Cluck U Chicken. They do not reflect the business purpose of each expenditure. Exhibit 4-P does not reflect the business purpose of each expenditure. Nor is there any evidence or suggestion in paragraph 16 that Exhibit 4-P is a contemporaneous or reliable record. Corroborating evidence must be contemporaneous, reliable, or both, in order to qualify under the strict substantiation requirement. Sec. 1.274-5T(c)(1),

---

[13]Para. 16 states that the purpose of Exhibit 4-P is the "clarification" of Johnson's "claimed expenses."

**[*17]** Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

Thus, we hold that Johnson has not met his burden to show that he is entitled to any deduction for meals-and-entertainment expenses.

    b.    <u>Travel</u>

Johnson also claimed $7,693 as a deduction for travel expenses. The IRS disallowed the entire travel-expense deduction on the ground that Johnson had not established the business purpose of the travel. Travel expenses are another type of expenditure to which the strict substantiation requirements of section 274(d) apply. Johnson claimed at trial that part of the travel-expense deduction he claimed was for a marketing prize. He testified that he provided a free trip to Jamaica for the client who referred him the most business.

Johnson testified that the client who went on the trip to Jamaica was named Carol Miller. However, he did not provide any receipts or tickets with Carol Miller's name on them. Furthermore, several expenses seemingly related to Jamaica appear on Johnson's own bank statement. Johnson's bank statement showed that ATM withdrawals and expenditures were made in Jamaica on May 3, 4, and 7. The statement also showed an ATM withdrawal and a parking-garage-fee payment at Baltimore-Washington International Airport on May 8. Johnson testified that Miller did not have access to his account. Thus, we find that Johnson

**[*18]** took the trip to Jamaica himself.  He introduced no evidence suggesting that his trip had any business purpose.  We hold that he is not entitled to any deduction for travel expenses for the trip to Jamaica.

It is unclear from the record how much of the $7,693 that Johnson claimed on his return as a travel-expense deduction is attributable to the Jamaica trip and how much is not.  Johnson testified that he made business trips to Chicago, Illinois, and Savannah, Georgia, to help unidentified people open their own tax preparation businesses in those cities.  Johnson did not explain and the record does not reveal what specific expenditures he made on these other trips that would make up this total.  Nor did he show that any such travel expenses, if he incurred them, were ordinary and necessary to his business.  Finally, he failed to introduce evidence to substantiate the purported expenditures under section 274(d).  We therefore hold that Johnson is not entitled to any deductions for travel expenses.

6.    Accuracy-related penalty under section 6662(a)

Section 6662(a) and (b)(2) impose a 20% penalty on any part of an underpayment that is attributable to a substantial understatement of income tax.  Generally, an "understatement" is the excess of the tax required to be shown on the return over the tax shown on the return.  Sec. 6662(d)(2)(A); sec. 1.6662-4(b)(2), Income Tax Regs.  An understatement is substantial if it exceeds

**[\*19]** the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs. Alternatively, the penalty may be imposed if the underpayment of tax is due to negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence is "a lack of due care or a failure to do what a reasonable and prudent person would do under the circumstances." Bunney v. Commissioner, 114 T.C. 259, 266 (2000). Negligence also includes failure to maintain adequate books and records or failure to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

An exception to the accuracy-related penalty applies to any part of an underpayment for which there was reasonable cause and good faith. Sec. 6664(c)(1). Under section 7491(c), the IRS has the burden of production for penalties. See Higbee v. Commissioner, 116 T.C. at 446 (the IRS must produce "sufficient evidence indicating that it is appropriate to impose the * * * penalty", but the IRS need not introduce evidence on exceptions to the penalty). Whether the taxpayer acted with reasonable cause and in good faith is decided on a case-to-case basis considering all relevant facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

**[\*20]** Johnson's deficiency, as determined in the notice, was $10,830. This exceeds both $5,000 and 10% of his total corrected tax liability.[14] Alternatively, the IRS asserts that Johnson is subject to the penalty because his underpayment was due to negligence or disregard of rules or regulations. The IRS points out that Johnson failed to produce the necessary documentation to substantiate his deductions; indeed, Johnson has admitted that he did not comply with recordkeeping requirements despite being aware of them. The IRS has thus met its burden of production.

Since the IRS met its burden of production, the burden is on Johnson to show that he is not liable for the penalty. Johnson did not specifically discuss the penalty in his arguments at trial. We ordered posttrial briefs, but Johnson failed to file one. We can, however, interpret some of his arguments at trial as assertions that he should not be penalized because he meets the requirements of reasonable cause and good faith under the terms of the section 6664(c)(1) exception.

Johnson asserted that he did not file his returns accurately because he did not fully understand the "complex" tax code. But Johnson worked as a tax

---

[14]Unless the Rule 155 calculation somehow does not so indicate. In the event that the Rule 155 calculation reveals no substantial understatement, then the IRS's alternative argument in favor of imposing a penalty--negligence--applies to Johnson. See infra pp. 20-21.

**[\*21]** preparer.  He claimed that he prepared the third-highest number of tax returns of any tax preparer on the East Coast of the United States.  He testified that he prepared returns for taxpayers who ran businesses and filed Schedule C with their returns.  He claimed to be familiar with reporting and substantiation requirements.  Thus, his purported ignorance of the rules, even if it were enough to qualify for a reasonable cause exception, is not credible.  We hold that Johnson does not qualify for the reasonable cause and good faith exception under section 6664(c)(1).

Since Johnson made no other claims that would allow him to escape liability for the penalty, we hold that Johnson is liable for a section 6662 accuracy-related penalty.

We have considered all other arguments the parties have made, and to the extent that we have not discussed them, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.