114 T.C. No. 17

UNITED STATES TAX COURT

MICHAEL G. BUNNEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20713-97.                    Filed April 10, 2000.

Petitioner (H) and his former wife (W) were divorced in 1992. H and W were residents of California, a community property State. The judgment dissolving the marriage ordered that H's IRA's, which were funded with contributions that were community property, be divided equally between H and W. In 1993, H withdrew $125,000 from his IRA's and transferred $111,600 to W. <u>Held</u>: sec. 408(g), I.R.C., precludes characterization of W as a 50-percent "distributee" of H's IRA's under sec. 408(d)(1), I.R.C.; accordingly, H, not W, is taxable on the distributions. <u>Held</u>, <u>further</u>, no portion of the $111,600 paid to W is excludable from H's income under sec. 408(d)(6), I.R.C. <u>Held</u>, <u>further</u>, H is liable for the sec. 72(t), I.R.C., additional tax on the IRA distributions. <u>Held</u>, <u>further</u>, petitioner had a reasonable basis for his position, and thus the accuracy-related penalty for negligence under sec. 6662(a), I.R.C., applies only with respect to the adjustments conceded by H.

Lawrence J. Kaplan, for petitioner.

Christine V. Olsen, for respondent.


OPINION


LARO, Judge: This case is before the Court fully stipulated. See Rule 122. Petitioner petitioned the Court to redetermine respondent's determination of an $84,080 deficiency in Federal income tax for 1993 and a $16,816 accuracy-related penalty for negligence under section 6662(a).

After concessions,[1] we must decide the following issues with respect to 1993:

1. Whether petitioner's gross income includes the entire $125,000 in distributions he received from his individual retirement accounts (IRA's). We hold it does.

---

[1]Petitioner concedes the following: (1) His gross income includes a $64,054 gain on the sale of his home; (2) he may deduct only $1,476 of the $11,735 claimed for legal and professional fees paid; (3) he may not deduct the $11,000 claimed with respect to the purchase of a horse, but may take a Schedule F, Profit or Loss From Farming, depreciation deduction in the amount of $393; and (4) he may not deduct the $5,178 claimed for repair expenses paid. Petitioner also concedes that he should be taxed on one-half of the $125,000 in IRA distributions he received in 1993, but he challenges whether he is liable for tax on the other half.

2.  Whether petitioner is subject to the 10-percent additional tax for early distributions under section 72(t).  We hold he is.

3.  Whether petitioner is liable for the negligence accuracy-related penalty.  We hold he is, but only as to the conceded items.

Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.

## Background

The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.  Petitioner was born on August 23, 1944.  He resided in California when the petition in this case was filed.

Petitioner was formerly married.  He and his former spouse were granted a Judgment of Dissolution of Marriage (dissolution judgment) on August 17, 1992.  The dissolution judgment stated: "IT IS FOUND that all of MICHAEL BUNNEY'S retirement valued at approximately $120,000 was accumulated by the parties prior to their separation and ordered to be divided equally between the parties."

Petitioner's retirement savings consisted of several IRA accounts.  The money used to fund petitioner's IRA's had been

community property.  During 1993, petitioner withdrew $125,000 from his IRA's and deposited the proceeds in his money market savings account.  During the same year, petitioner transferred $111,600 to his former spouse in a transaction in which he acquired her interest in the family residence.  Petitioner reported only the remaining $13,400 of the distributions on his 1993 Federal income tax returns.

Discussion

Issue 1.  Taxability of IRA Distributions

    A.    Allocation of Tax Liability

We pass for the first time on the question of whether one-half of community funds contributed to an IRA account established by an IRA participant are, upon distribution, taxable to the participant's former spouse by virtue of the fact that the former spouse has a 50-percent ownership interest in the IRA under applicable community property law.  Section 408(g), as discussed below, provides explicitly that section 408 (the statutory provision governing IRA requirements and the taxability of IRA distributions) "shall be applied without regard to any community property laws".  Thus, at first blush, it appears that the answer to our question is that the husband is taxable on 100-percent of the distribution notwithstanding the fact that his former wife owned and was entitled to receive 50 percent of the distributed proceeds.  As petitioner observes, however, the Commissioner

administratively has recognized that section 408(g) does not preclude taking community property rights into account in allocating the tax consequences of IRA distributions. See Priv. Ltr. Rul. 80-401-01 (Jul. 15, 1980) (distribution of decedent's community property interest in surviving spouse's IRA is taxable to decedent's legatees). But see Priv. Ltr. Rul. 93-440-27 (Aug. 9, 1993) (distribution of wife's community property interest in husband's IRA under a separation agreement is taxable to husband).[2] Additionally, the courts of at least two community property States have concluded that section 408(g) does not preempt recognition of community property rights in an IRA for State law purposes.[3] See In re Mundell, 857 P.2d 631, 633 (Idaho 1993) (community property interest in wife's IRA is includable in

---

[2]We recognize that private letter rulings have no precedential value but merely represent the Commissioner's position as to a specific set of facts. See sec. 6110(j)(3) (redesignated sec. 6110(k)(3) under the IRS Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3509(b), 112 Stat. 743, 772); Lucky Stores, Inc. v. Commissioner, 153 F.3d 964, 966 n.5 (9th Cir. 1998), affg. 107 T.C. 1 (1996); Fowler v. Commissioner, 98 T.C. 503, 506 n.5 (1992); Estate of Jalkut v. Commissioner, 96 T.C. 675, 684 (1991); First Chicago Corp. v. Commissioner, 96 T.C. 421, 443 (1991), affd. 135 F.3d 457 (7th Cir. 1998). We mention these rulings merely to set forth the Commissioner's administrative practice as to sec. 408(g). See Rowan Cos. v. United States, 452 U.S. 247, 261 n.17 (1981); First Chicago Corp. v. Commissioner, 96 T.C. 421, 443 (1991).

[3]We address a somewhat narrower issue, i.e., whether for Federal income tax purposes petitioner is the sole "distributee" and thus taxable on the distributions he received from his IRA's. We do not address, as did these State cases, whether sec. 408(g) preempts community property interests in IRA's altogether.

husband's estate); <u>Succession of McVay v. McVay</u>, 476 So. 2d 1070, 1073-1074 (La. Ct. App. 1985) (IRA to be accounted for in division of community property at divorce).

Our analysis of this issue begins with section 408(d)(1). Pursuant to that section, "any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee, as the case may be, in the manner provided under section 72." Neither the Code nor applicable regulations define the terms "distributee" or "payee" as used in section 408(d)(1). In construing a parallel provision governing the taxation of distributions from pension plans under section 402,[4] we have held that a distributee is generally "the participant or beneficiary who, under the plan, is entitled to receive the distribution". <u>Darby v. Commissioner</u>, 97 T.C. 51, 58 (1991); see also <u>Estate of Machat v. Commissioner</u>, T.C. Memo. 1998-154. Under this definition, petitioner would be the distributee and the payee because he was the IRA participant and received the distributions according to the terms of his IRA's. Similarly, petitioner's former spouse would not be a distributee because she was not the IRA participant and did not receive the funds as a designated beneficiary. Thus, unless the community

---

[4]Sec. 402(b)(2) provides that "The amount actually distributed or made available to any distributee by * * * [an employee's trust] shall be taxable to the distributee, in the taxable year in which so distributed or made available, under section 72".

property interest of petitioner's former spouse is recognizable for Federal income tax purposes, the distributions are taxable to petitioner.

Petitioner acknowledges that section 408(g) requires that section 408 be applied without regard to community property laws, but he contends that his former spouse's community property interest in his IRA's arose ab initio and thus may be taken into account to determine the taxability of the distributions. Respondent takes no position in this case on the effect of section 408(g). Instead, respondent contends that petitioner is the sole taxable distributee because he was the sole recipient of the distributions.

We disagree with respondent's assertion that the recipient of an IRA distribution is automatically the taxable distributee. We have held that in the context of a distribution from a pension plan the term "distributee" is not necessarily synonymous with "recipient". Estate of Machat v. Commissioner, T.C. Memo. 1998-154 (citing Darby v. Commissioner, 97 T.C. 51, 64-66 (1991)). We nevertheless find that petitioner was the sole distributee in this case. The IRA's were established by petitioner in his name, and, by reason of section 408(g), his wife is not treated as a distributee of any portion of the IRA for Federal income tax purposes despite her community property interest therein.

Recognition of community property interests in an IRA for Federal income tax purposes would conflict with the application of section 408 in several ways. As an initial matter, an account imbued with a community property characterization would have difficulty meeting the IRA qualifications. Section 408(a) defines an IRA as a trust created or organized "for the exclusive benefit of <u>an individual</u> or his beneficiaries". (Emphasis added.) An account maintained jointly for a husband and wife would be created for the benefit of two individuals and would not meet this definition. See <u>Rodoni v. Commissioner</u>, 105 T.C. 29, 33 (1995) ("as its name suggests, the essence of an IRA is that it is a retirement account created to provide retirement benefits to 'an individual'").

Secondly, recognition of community property interests would jeopardize the participant's ability to roll over the IRA funds into a new IRA. Section 408(d)(3)(A)(i) provides that distributions out of an IRA "to the <u>individual</u> for whose benefit the account * * * is maintained" are not taxable under section 408(d)(1) if the entire amount received is paid into an IRA "for the benefit of such <u>individual</u>" within 60 days. (Emphasis added.) The rollover of a community-owned IRA would doubly fail because both the distribution and contribution would involve two persons.

Thirdly, recognition of community property interests would affect the minimum distribution requirements for IRA's. Section 408(a)(6) requires that distributions from an IRA account meet the requirements of section 401(a)(9). Among those requirements is that the individual for whom an IRA is maintained withdraw the balance in the IRA or start receiving distributions from the IRA by April 1 of the year following the year in which such individual reaches 70-1/2. See sec. 401(a)(9)(c). Recognition of a nonparticipant spouse's community property interest in the IRA might require the age of the nonparticipant spouse to be taken into account in determining the commencement date for the required distributions.

In addition, treating a nonparticipant spouse as a 50-percent distributee would create an asymmetry. Section 219(f)(2) provides that the deductibility of a contribution to an IRA is to be determined without regard to any community property laws. See Medlock v. Commissioner, T.C. Memo. 1978-464. Section 408(g) appropriately balances that provision by disregarding community property laws when the IRA funds are later distributed. These sections work in tandem to insure that an IRA participant who lives in a community property State is treated as both the sole contributor and the sole distributee of IRA funds.

In Powell v. Commissioner, 101 T.C. 489, 496 (1993), we indicated that the distribution of a community property interest

in a retirement plan is taxed one-half to each spouse <u>except</u> where Congress has specified otherwise; e.g., in sections 219(f)(2), 402(e)(4)(G), and 408(g). In <u>Karem v. Commissioner</u>, 100 T.C. 521, 529 (1993), we held that a pension distribution subject to section 402(e)(4)(G) was taxable entirely to the participant even though his former spouse was considered a one-half owner under State community property law. Unlike the taxpayer in <u>Powell</u>, the taxpayer in <u>Karem</u> had elected the multi-year averaging method then available under former section 402(e) for computing the tax due on lump-sum distributions. As a result, the distributions were subject to former section 402(e)(4)(G), which provided that "the provisions of this subsection * * * shall be applied without regard to community property laws." Consistent with these opinions, we hold that section 402(g) precludes taxation of petitioner's former spouse as a distributee in recognition of her State community property interest in petitioner's IRA's. Accordingly, the distributions from petitioner's IRA's are wholly taxable to petitioner.

B.   <u>Nonrecognition Under Section 408(d)(6)</u>

Petitioner alternatively contends that the distribution and transfer of his IRA proceeds pursuant to the dissolution judgment

was a nonrecognition event for him under section 408(d)(6).[5]  We disagree.

There are two requirements that must be met for the exception of section 408(d)(6) to apply:  (1) There must be a transfer of the IRA participant's "interest" in the IRA to his spouse or former spouse, and (2) such transfer must have been made under a section 71(b)(2) divorce or separation instrument.

The transaction at issue does not meet the first requirement.  Petitioner did not transfer any of his interest in his IRA's to his former spouse.  Rather, he cashed out his IRA's and paid her some of the proceeds.[6]  The distribution itself was

---

[5]Sec. 408(d)(6) provides:

> Transfer of account incident to divorce.--The transfer of an individual's interest in an individual retirement account or an individual retirement annuity to his spouse or former spouse under a divorce or separation instrument described in subparagraph (A) of section 71(b)(2) is not to be considered a taxable transfer made by such individual notwithstanding any other provision of this subtitle, and such interest at the time of the transfer is to be treated as an individual retirement account of such spouse, and not of such individual. Thereafter such account or annuity for purposes of this subtitle is to be treated as maintained for the benefit of such spouse.

[6]IRS Publication 590 describes two commonly used methods of transferring an interest in an IRA:  (1) Changing the name on the IRA to that of the nonparticipant spouse or (2) directing the trustee of the IRA to transfer the IRA assets to the trustee of an IRA owned by the nonparticipant spouse.

a taxable event for petitioner that was not covered by section 408(d)(6).[7]  See Czepiel v. Commissioner, T.C. Memo. 1999-289.

Issue 2.  Section 72(t)(1) Additional Tax

Respondent determined that the distributions made to petitioner out of his IRA's were subject to the 10-percent additional tax on early withdrawals from an IRA imposed by section 72(t).[8]  Section 72(t)(1) imposes a 10-percent additional tax on early distributions from qualified retirement plans.  A qualified retirement plan includes an IRA.  Secs. 408(a), 4974(c)(4).

Section 72(t)(2)(A) lists the types of distributions to which the additional tax does not apply.  Petitioner has the burden of proving his entitlement to any of these exceptions. See Matthews v. Commissioner, 92 T.C. 351, 361-362 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990).  Petitioner has not produced any

_____

[7]Sec. 408(d)(6) governs the transfer of an "individual's interest" in an IRA.  It does not address distributions.  In contrast, distributions from a qualified pension plan pursuant to a qualified domestic relations order may be reallocated to a spouse (designated as the "alternate payee" and considered a plan "beneficiary").  See sec. 402(e)(1)(A); 29 U.S.C. sec. 1056(d)(3)(J) (1993).

[8]Sec. 72(t)(1) provides:

> Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

evidence that any exception applies in this case.  Accordingly, we sustain respondent's determination as to the section 72(t) additional tax.

Issue 3.  Addition to Tax for Negligence.

Respondent determined that petitioner is liable for the negligence accuracy-related penalty under section 6662(a).  That section imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment that is attributable to negligence.  Petitioner will avoid this penalty if the record shows that he made a reasonable attempt to comply with the provisions of the Internal Revenue Code, and that he was not careless, reckless, or in intentional disregard of rules or regulations.  See sec. 6662(c); Accardo v. Commissioner, 942 F.2d 444, 452 (7th Cir. 1991), affg. 94 T.C. 96 (1990); Drum v. Commissioner, T.C. Memo. 1994-433, affd. without published opinion 61 F.3d 910 (9th Cir. 1995).

Negligence connotes a lack of due care or a failure to do what a reasonable and prudent person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1 (1989), affd. 925 F.2d 348 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The negligence accuracy-related penalty is inapplicable to any portion of an underpayment to the extent that an individual has reasonable cause for that portion and acts in good faith with respect thereto.  See sec. 6664(c)(1).  Such

penalty is also inapplicable where a taxpayer has a "reasonable basis" for the return position taken. See sec. 1.6662-3(b), Income Tax Regs. A return position that is "arguable, but fairly unlikely to prevail in court" satisfies the reasonable basis standard. Sec. 1.6662-4(d)(2), Income Tax Regs. The negligence accuracy-related penalty is inappropriate where an issue to be resolved by the Court is one of first impression involving unclear statutory language. See Everson v. United States, 108 F.3d 234 (9th Cir. 1997); Lemishow v. Commissioner, 110 T.C. 110 (1998).

With respect to petitioner's conceded items, petitioner claimed deductions to which he was not entitled, duplicated deductions, and omitted taxable gain from the sale of property. Petitioner also failed to report income from more than half of his IRA distributions and failed to pay the 10-percent premature distribution penalty. Petitioner contends that he is not liable for an accuracy-related penalty with respect to these items because Form 1040 is a "complicated return", and he utilized a tax software program to prepare his return.

On this stipulated record, we conclude petitioner is liable for the negligence accuracy-related penalty with respect to the conceded items. There is no evidence that reasonable cause existed for these errors or that petitioner was not negligent. Tax preparation software is only as good as the information one

inputs into it.  Petitioner has not shown that any of the conceded issues were anything but the result of his own negligence or disregard of regulations.[9]

As to the contested adjustment, this Court has not previously addressed the issue of whether section 408(g) precludes recognition of a spouse's community property interest in allocating the taxability of an IRA distribution.  While we find the text of section 408(g) to be clear and unambiguous on its face, we bear in mind that the Commissioner has interpreted section 408(g) administratively in a manner that is inconsistent with our holding herein.  Under these circumstances, we conclude that petitioner had a reasonable basis for his return position that one-half of his IRA distributions were allocable to his former spouse.[10]  Accordingly, we hold the negligence accuracy-

_____

[9]Petitioner has claimed entitlement to an NOL carryback that may eliminate some or all of the deficiency determined in this case.  The parties have agreed to address this issue in the context of their Rule 155 computations.  Petitioner is liable for the negligence accuracy-related penalty regardless of whether the claimed NOL carryback eliminates the deficiency for the year.  A loss in a later year does not reduce the underpayment for purposes of imposing the penalty.  See C.V.L. Corp. v. Commissioner, 17 T.C. 812, 816 (1951); McCauley v. Commissioner, T.C. Memo. 1988-431; sec. 1.6664-2(f), Income Tax Regs.; see also Estate of Trompeter v. Commissioner, 111 T.C. 57, 59-60 (1998), and the cases cited therein.

[10]We note that for returns filed on or after Dec. 2, 1998, respondent's view is that a return position "reasonably based on one or more of the authorities set forth in §1.6662-4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments)" will generally satisfy

(continued...)

related penalty is inapplicable to the taxes and penalties imposed on one-half of petitioner's 1993 IRA distributions.

In reaching our holdings herein, we have considered all arguments made by the parties, and, to the extent not discussed above, we find those arguments to be irrelevant or without merit.

To reflect the foregoing and concessions,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

---

[10](...continued)
the reasonable basis standard.  Sec. 1.6662-3(b)(3), Income Tax Regs., as amended by T.D. 8790, 1998-50 I.R.B. 4.  Among the authorities set forth in sec. 1.6662-4(d)(3)(iii), Income Tax Regs., are private letter rulings issued after Oct. 31, 1976.