T.C. Memo. 2018-20

UNITED STATES TAX COURT

JOHN R. KIRKPATRICK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11181-16.                          Filed February 22, 2018.

P was ordered in a divorce proceeding interim order to transfer $100,000 directly and nontaxably into an IRA titled in W's name and further to pay W $40,000 for attorney's fees and suit money. P directed distributions from his IRAs into a checking account from which he wrote checks to W and to third parties. P reported the $140,000 of distributions (among others, the taxability of which he has conceded) as nontaxable on his 2013 Federal income tax return.

Held: P's IRA distributions are not a nontaxable transfer of an account incident to divorce under I.R.C. sec. 408(d)(6) but instead are taxable income to him under I.R.C. sec. 408(d)(1). Bunney v. Commissioner, 114 T.C. 259, 265 (2000), followed.

John R. Kirkpatrick, pro se.

Alicia A. Mazurek, Lisa DiCerbo, and Robert D. Heitmeyer, for respondent.

[*2]                    MEMORANDUM OPINION

LARO, Judge:  This case arises out of respondent's adjustments to petitioner's return for the 2013 taxable year.  The case was submitted fully stipulated for decision without trial.  See Rule 122.[1]

Respondent determined a $98,712 deficiency in petitioner's 2013 Federal income tax, and a $19,742 section 6662(a) and (b)(2) accuracy-related penalty for a substantial understatement of income tax that he has conceded.  After the parties' concessions, the sole issue we decide is whether $140,000 in individual retirement account (IRA) distributions that petitioner received during 2013 is taxable income under section 408(d)(1) or a nontaxable transfer of an account incident to divorce under section 408(d)(6).  We hold that it is the former.

                           Background

I.      Overview

The parties submitted this case fully stipulated under Rule 122.  The stipulation of facts and the facts drawn from stipulated exhibits are incorporated herein.  Petitioner is a medical doctor and a licensed physician in the State of

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) applicable for the relevant year.  Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] Michigan and the District of Columbia. He resided in Michigan when he filed his petition with this Court. This case is appealable to the Court of Appeals for the Sixth Circuit absent stipulation of the parties to the contrary.

## II.    Petitioner's Divorce

Petitioner was married to Christiana D. Kirkpatrick for an unspecified period. On April 17, 2012, while petitioner was residing in the State of Maryland, Ms. Kirkpatrick filed for divorce in the circuit court for Montgomery County, Maryland. At the time, Maryland was not a "no fault divorce" jurisdiction, thus requiring a party seeking a divorce to show cause for its granting. After Ms. Kirkpatrick filed for divorce, petitioner was "kicked out of the house" that he shared with her. He moved to Michigan in July 2012.

Petitioner and Ms. Kirkpatrick did not divorce amicably. The proceeding involved, among other things, matters relating to custody, support, and visitation of the couple's two minor children. On September 24, 2012, a court hearing was held in the divorce case, at which time a consent order was finalized between the parties. In that order, Ms. Kirkpatrick's request for pendente lite spousal support was granted.[2] Although the order addressed multiple financial considerations

---

[2]Under Maryland law, pendente lite orders, such as for alimony, are temporary arrangements allowing for support to be provided to a spouse until the

(continued...)

[*4] incident to the divorce proceedings, two particular paragraphs are relevant here. The first reads: "ORDERED, that the Defendant shall transfer to Ms. Kirkpatrick the sum of One Hundred Thousand Dollars ($100,000.00) directly (and in a non-taxable transaction) into an IRA appropriately titled in Ms. Kirkpatrick's name within fourteen (14) days of the entry of this Order and that the funds will not be withdraw [sic] until 2013". The second provides: "ORDERED, that the Defendant shall pay to the Plaintiff a lump sum of Forty Thousand Dollars ($40,000.00) by 5:00 pm on September 26th, 2012 for Pendente Lite Attorney's Fees and Suit Money via direct deposit".

Petitioner was separated from Ms. Kirkpatrick for the entirety of the 2013 taxable year, and the two did not live together at any time during that year. The divorce of petitioner and Ms. Kirkpatrick was finalized on June 30, 2014, when the circuit court entered a judgment of absolute divorce.

---

[2](...continued)
final resolution of a divorce proceeding. See, e.g., Rethorst v. Rethorst, 133 A.2d 101, 109 (Md. 1957) ("The purpose of alimony pendente lite has frequently been stated as being to provide temporary support for a wife in need thereof for a reasonable time until her suit for divorce can be brought to trial."); see also Black's Law Dictionary 1314 (10th ed. 2014) (noting that "pendente lite" is the Latin for "while the action is pending").

[*5] III.     Petitioner's IRA Withdrawals and Payments to Ms. Kirkpatrick

Petitioner did not transfer any money into an IRA titled in Ms. Kirkpatrick's name at any time after the consent order was entered on September 24, 2012, or before their divorce was finalized on June 30, 2014. However, he did make payments directly to Ms. Kirkpatrick throughout 2013. Petitioner, who at that time was over 59-1/2 years of age, paid the money he was ordered to pay to her through a series of checks. To make these payments, he withdrew funds from two of his IRAs held at JPMorgan Chase Bank, N.A. (JPMorgan), and transferred those disbursements to his JPMorgan checking account, from which he wrote checks to Ms. Kirkpatrick. Petitioner also wrote checks to third parties in partial satisfaction of the money he was ordered to pay to Ms. Kirkpatrick pursuant to the consent order.

Petitioner received two Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., from JPMorgan for the 2013 taxable year. One showed gross distributions of $116,489.39 from the first account. The other showed gross distributions of $294,665.64 from the second account. Each had a box checked to indicate that the taxable amount was not determined. Petitioner and Ms. Kirkpatrick filed a joint Federal income tax return for the 2013 taxable year, on which they reported total

[*6] IRA distributions of $411,155, with only $116,489 of that amount claimed to be taxable.

IV.    Notice of Deficiency and the Parties' Concessions

On February 8, 2016, respondent issued the notice of deficiency for the 2013 taxable year, wherein he determined a $98,712 deficiency and a $19,742 substantial understatement penalty.  Respondent determined that petitioner had the following taxable income items for 2013:  (1) interest of $13 from Capital One N.A.; (2) Schedule D/capital gain dividends of $4 from Wellesley Income Fund Inv. Vanguard; (3) taxable dividends of $5 from Wellesley Income Fund Inv. Vanguard; and (4) taxable retirement income of $294,665 from JPMorgan.

Petitioner concedes all of the above income items, except for $140,000 of the taxable retirement income from JPMorgan that he had reported as nontaxable on his return as originally filed.  Respondent in turn concedes that petitioner is not liable for the $19,742 accuracy-related penalty for an underpayment attributable to a substantial understatement of income tax.

The last day for petitioner to file a petition contesting respondent's determination was May 9, 2016.  See sec. 6213(a).  The Court received the petition on May 10, 2016, but because it was mailed on May 6, 2016, and bore a corresponding U.S. postmark, it is treated as timely filed.  See sec. 7502(a).

[*7]                               Discussion

I.    Overview

Generally, "any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee, as the case may be", sec. 408(d)(1), for the taxable year in which the payment or distribution is received, sec. 1.408-4(a)(1), Income Tax Regs.  An IRA is a type of individual retirement plan.  Sec. 7701(a)(37)(A).  There is an exception to the general rule of taxability, however, for transfers of accounts incident to divorce:

> The transfer of an individual's interest in an individual retirement account or an individual retirement annuity to his spouse or former spouse under a divorce or separation instrument described in subparagraph (A) of section 71(b)(2) is not to be considered a taxable transfer made by such individual notwithstanding any other provision of this subtitle, and such interest at the time of the transfer is to be treated as an individual retirement account of such spouse, and not of such individual.  Thereafter such account or annuity for purposes of this subtitle is to be treated as maintained for the benefit of such spouse.

Sec. 408(d)(6).  The "divorce or separation instrument" referenced in section 408(d)(6) must be "a decree of divorce or separate maintenance or a written instrument incident to such a decree".  See sec. 71(b)(2)(A); see also sec. 1.408-4(g)(1), Income Tax Regs. ("The transfer of an individual's interest, in whole or in part, in an individual retirement account * * * to his former spouse under a valid

**[*8]** divorce decree or a written instrument incident to such divorce shall not be considered to be a distribution from such an account * * * to such individual or his former spouse; nor shall it be considered a taxable transfer by such individual to his former spouse notwithstanding any other provision of Subtitle A of the Code."). Thus there are two requirements mandated by section 408(d)(6): (1) there must be a transfer of the IRA participant's "interest" in the IRA to his spouse or former spouse, and (2) the transfer must have been made under a divorce or separation instrument. Bunney v. Commissioner, 114 T.C. 259, 265 (2000).

II.    The Parties' Positions

A.    Petitioner's Argument

Petitioner believes that the $140,000 distribution in question qualifies as a transfer of an account incident to divorce. He argues that the consent order by the Maryland court granting interim spousal support to Ms. Kirkpatrick is a "written instrument incident to" a divorce decree within the meaning of section 71(b)(2)(A), as incorporated by reference in section 408(d)(6) and further referenced in section 1.408-4(g)(1), Income Tax Regs.

Petitioner further asserts that nothing in section 408 or the regulations thereunder offers any specific guidance on the timing of a transfer for it to qualify under the section 408(d)(6) exception. Therefore, he maintains, it is logical to

[*9] assume that any such transfer is nontaxable so long as it occurs in a timeframe beginning with the issuance of a written instrument, such as the consent order, and through a judgment of absolute divorce. Petitioner points out that this was the case here, because his payments were made in 2013, which was after the consent order was issued in 2012 but before the divorce was finalized in 2014.

Finally, petitioner's view is that the fact that the funds passed through his checking account on the way from him to his spouse's IRA should have no bearing on the taxability of the exchange because the funds were moved within the allowable time limit for this type of transaction.

B.      Respondent's Argument

Respondent's position is that none of the distributions petitioner received in 2013 from the JPMorgan IRAs met the requirements of the section 408(d)(6) exception. First, respondent argues that petitioner did not transfer any interest in his IRAs to Ms. Kirkpatrick: No IRA was opened in her name, nor was there any transfer of funds from petitioner's IRAs to any IRA owned by Ms. Kirkpatrick. Respondent points out that this Court in the past has held that section 408(d)(6) does not apply to proceeds from an IRA cashed out and paid pursuant to a divorce order or judgment or otherwise transferred to a nonparticipant spouse. See Bunney v. Commissioner, 114 T.C. at 265; see also Jones v. Commissioner, T.C.

[*10] Memo. 2000-219, 80 T.C.M. (CCH) 76, 77-78 (2000); Czepiel v. Commissioner, T.C. Memo. 1999-289, 78 T.C.M. (CCH) 378, 381-382 (1999), aff'd without published opinion, No. 00-1257, 2000 WL 1902238 (1st Cir. Dec. 5, 2000).

Second, while he admits that the consent order was a written document entered by a Maryland State court as part of the divorce proceeding between petitioner and Ms. Kirkpatrick, respondent maintains that petitioner did not comply with the order's terms. Respondent notes that the order required petitioner to transfer in a nontaxable transaction $100,000 into an IRA titled in Ms. Kirkpatrick's name within 14 days of the order's entry, which petitioner failed to do. Thus, respondent asserts, the transfers should not be considered as made under a divorce or separation instrument or written instrument incident to such.

Furthermore, respondent observes that petitioner's focus on the timeframe within which the amounts were paid to Ms. Kirkpatrick is misplaced. Respondent argues that the primary question is whether there was a transfer of an IRA interest, and not whether the distribution and transfer of IRA funds occurred within a certain time. Respondent also contends that petitioner's assertion on brief that money passed from him to Ms. Kirkpatrick's IRA is not supported by the record,

**[*11]** although even if it were so supported, respondent asserts, it would not be dispositive because there had been no transfer of an interest in the IRA itself.

Finally, respondent posits that any argument by petitioner that Maryland divorce law should be determinative as to the IRA distributions' taxability is erroneous, because State-specific requirements for obtaining a divorce in Maryland do not preempt or override the Code. Thus, according to respondent, all of the IRA distributions that petitioner received from JPMorgan during 2013 and used to make payments to Ms. Kirkpatrick and others under the purview of the then-pending divorce in Maryland State court are taxable to petitioner.

C.     Petitioner's Rebuttal

Petitioner disagrees with respondent's arguments. He maintains that the conditions set forth in the circuit court's consent order satisfy the two Bunney requirements that there be a transfer of the IRA participant's interest to his spouse or former spouse and that the transfer be under a divorce or separation instrument. Petitioner further asserts that he complied with all of the conditions set forth in the circuit court's order. He argues that he provided $140,000 to Ms. Kirkpatrick in a tax-free exchange. He believes, however, that she did not undertake the necessary steps on her part of establishing an IRA to accept the transferred funds and that he should not be responsible for her failure to do so.

[*12] Petitioner further contends that the Maryland rules of divorce are written and controlled by that State's courts and from time to time are in opposition to the Internal Revenue Service's position on what is and what is not taxable. To not follow the State court's instructions in his divorce case, petitioner argues, would have exposed him to contempt of court.

III.    Taxability of Petitioner's $140,000 Distribution From His IRAs

While the parties claim to be disputing $140,000 of distributions from petitioner's IRA, the actual sum in dispute appears to be only $100,000. In arriving at the $140,000 disputed amount, the parties have invited our attention to only two specific paragraphs in the circuit court's consent order. One required petitioner to transfer $100,000 directly and in a nontaxable transaction to an IRA titled in his then-wife's name. The other required petitioner to pay to Ms. Kirkpatrick $40,000 for attorney's fees and suit money. The parties' arguments have focused on the consent order paragraph pertaining to the $100,000 sum. The parties have not disputed the $40,000 sum specifically, nor the consent order paragraph to which it relates. This is understandable because the order for petitioner to pay $40,000 for attorney's fees and suit money clearly is not an order for the transfer of an interest in an IRA, and the sum could have been paid out of any funds--retirement or otherwise. See Czepiel v. Commissioner, 78 T.C.M.

**[\*13]** (CCH) at 381.  Petitioner has not advanced any argument about how or why IRA distributions to pay this $40,000 award should be excluded from his gross income and thus is deemed to have conceded it.  See, e.g., Thiessen v. Commissioner, 146 T.C. 100, 106 (2016) ("[I]ssues and arguments not advanced on brief are considered to be abandoned.").  Accordingly, the dispute in this case effectively is confined to $100,000 of petitioner's IRA distributions.

A.  The Code and the State Court's Consent Order

Before proceeding, we address a suggestion advanced by petitioner that the Maryland court's instructions to him in the consent order conflicted with the Code.  We note that under the Supremacy Clause, Article VI, Clause 2 of the U.S. Constitution:  "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * *, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  State law thus is preempted insofar as it conflicts with Federal law, for instance where it is impossible to comply with both State and Federal requirements or where State law impedes the full accomplishment and execution of congressional purposes and objectives.  See English v. General Elec. Co., 496 U.S. 72, 79 (1990).  Accordingly, to the extent that a State court's dictates conflict directly with Federal tax law, the former must

**[*14]** yield to the latter.  See, e.g., Burnet v. Harmel, 287 U.S. 103, 110 (1932) ("State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law."); Griffin v. United States, 400 F.2d 612, 614 n.1 (6th Cir. 1968) ("This state judgment, of course, does not control the application of the federal tax laws." (citing Morgan v. Commissioner, 309 U.S. 78 (1940))); United States v. Dallas Nat'l Bank, 152 F.2d 582, 585 (5th Cir. 1945) ("Having been enacted within the scope of the power delegated to the Federal Government, the Internal Revenue statutes are a part of the supreme law of the land.  If they are in conflict with State law * * *, the latter must yield."); Robertson v. Commissioner, T.C. Memo. 1997-526, 74 T.C.M. (CCH) 1257, 1261 (1997) ("A State's public policy to the contrary cannot control the operation of Federal tax laws unless otherwise expressly provided for by Congress." (citing Burnet v. Harmel, 287 U.S. at 110)).

Thankfully, in this case we are not faced with such discord.  The only relevant reference to taxation in the Maryland court's consent order is in its direction to petitioner to transfer $100,000 "directly (and in a non-taxable transaction) into an IRA appropriately titled in Ms. Kirkpatrick's name".  The court's language is not attempting to dictate how the Federal Government should treat for tax purposes any such payment.  Rather, it is instructing petitioner to

[*15] transfer money directly into an IRA owned by Ms. Kirkpatrick and to do so in a nontaxable way that complies with existing law. This is an instruction not on petitioner's behalf but to him, an instruction moreover that petitioner did not obey: He neither made a transfer within 14 days of the order's entry as required therein nor transferred the sum directly into an IRA titled in Ms. Kirkpatrick's name. We therefore conclude that there is no conflict between the Code and the circuit court's consent order. Petitioner's argument on this point is misplaced.

B.     Applicability of the Section 408(d)(6) Exclusion From Gross Income

We agree with respondent that petitioner does not fall within the section 408(d)(6) exclusion from gross income and that the disputed distributions from his JPMorgan IRAs should be included in his gross income. As noted above, this Court has held that for section 408(d)(6) to apply, two requirements must be met: (1) there must be a transfer of the IRA participant's interest in the IRA to his spouse or former spouse, and (2) the transfer must have been made under a section 71(b)(2)(A) divorce or separation instrument. Bunney v. Commissioner, 114 T.C. at 265. As the Court observed in Bunney, two commonly used methods of transferring an interest in an IRA are to (1) change the name on the IRA to that of the nonparticipant spouse or (2) direct the IRA's trustee to transfer the IRA assets to the trustee of an IRA owned by the nonparticipant spouse. Id. at 265 n.6. In

[*16] <u>Bunney</u> we rejected the idea that taking a distribution from an IRA and then making a payment to one's spouse qualifies as a transfer of an interest in that IRA. <u>Id.</u> at 265. We further clarified in <u>Jones v. Commissioner</u>, 80 T.C.M. (CCH) at 77-78, that the section 408(d)(6) exception is limited and that "interest" is not synonymous with the money or other assets held in an IRA--indeed, that the withdrawal of funds from an IRA extinguishes the owner's interest in that IRA or the appropriate proportion thereof. <u>See also</u> <u>Czepiel v. Commissioner</u>, 78 T.C.M. (CCH) at 381 ("Petitioner did not transfer all or a portion of his interest in his IRA's to Ms. Czepiel. He received distributions from those IRA's and paid the funds distributed to him from those IRA's to Ms. Czepiel.").

The salient facts of this case closely resemble the facts in <u>Bunney</u> and <u>Jones</u>. Any differences, such as that in <u>Bunney</u> the taxpayer took postdivorce distributions from his IRA whereas petitioner took distributions while separated but not yet divorced from Ms. Kirkpatrick, are not material. What matters for purposes of the section 408(d)(6) exception is that there be a transfer of an individual's interest in an IRA to his spouse or former spouse. This did not occur here. Indeed, as respondent rightly observes, these is no indication besides petitioner's statement on brief (which under Rule 143(c) cannot constitute evidence) as to what Ms. Kirkpatrick did with the funds that were transferred to

**[*17]** her.  There is no evidence that the money that petitioner withdrew from his IRAs ever found its way into an IRA titled in Ms. Kirkpatrick's name.

Ultimately, petitioner's argument rests on the idea that the alleged substance of what occurred should govern and not its strict form.  This we cannot accept, even if we assume--although we restate that we do not find as a fact--that the funds distributed from petitioner's IRAs did find their way into an IRA titled in Ms. Kirkpatrick's name.  As the Court of Appeals for the Sixth Circuit, to which this case is appealable, articulated in Summa Holdings, Inc. v. Commissioner, 848 F.3d 779, 782 (6th Cir. 2017), rev'g T.C. Memo. 2015-119:  "'Form' is 'substance' when it comes to law.  The words of law (its form) determine content (its substance)."  The words of the law relevant here, section 408(d)(6), are specific:  "interest in an individual retirement account".  The statute does not say "assets from an individual retirement account", or more broadly, "interest in or assets from an individual retirement account".  This Court in Bunney, Jones, and Czepiel has given effect to the will of Congress as expressed in the plain meaning, see Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982) ("Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, 'that language must ordinarily be regarded as conclusive.'" (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102,

**[*18]** 108 (1980))), of section 408(d)(6) that only certain limited, direct IRA transfers qualify thereunder. Form matters. Here, all relevant sources--the Code; the caselaw; Internal Revenue Service guidance, see Bunney v. Commissioner, 114 T.C. at 265 n.6; and even the consent order in petitioner's divorce proceedings--suggest that taking distributions from IRAs and writing checks to one's spouse is not the appropriate form for a tax-free transfer of an account incident to divorce under section 408(d)(6). Thus we find that there was no transfer of petitioner's interest in the IRAs to Ms. Kirkpatrick.

Because we have found that petitioner did not transfer an interest in his IRAs to his then wife, we do not reach the second inquiry of whether a transfer was made under a section 71(b)(2)(A) divorce or separation instrument. See Jones v. Commissioner, 80 T.C.M. (CCH) at 78. Accordingly, we sustain respondent's deficiency determination.

IV. Conclusion

Petitioner was ordered by the State court conducting the proceedings in Ms. Kirkpatrick's divorce from him to transfer $100,000 directly and in a nontaxable transaction into an IRA titled in her name. Petitioner withdrew funds from his IRAs and deposited them in his checking account, from which he wrote checks to his then wife and others. In view of this, the $100,000 of distributions from

**[*19]** petitioner's IRAs does not fall within the section 408(d)(6) exclusion from gross income for transfers of accounts incident to divorce and thus is taxable income to him. See Bunney v. Commissioner, 114 T.C. at 265; see also Jones v. Commissioner, 80 T.C.M. (CCH) at 77-78. All other amounts raised in this case have been actually or constructively conceded.

We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty under section 6662(a).