T.C. Summary Opinion 2018-53

UNITED STATES TAX COURT

GLENN CUNNINGHAM BALLARD AND YU-YUAN PU, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12792-13S.                    Filed November 27, 2018.

Glenn Cunningham Ballard and Yu-Yuan Pu, pro sese.

<u>Sarah E. Sexton Martinez</u> and <u>Nicholas R. Rosado</u>, for respondent.

SUMMARY OPINION

ASHFORD, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.  Some monetary amounts are rounded

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other Court, and this opinion shall not be treated as precedent for any other case.

By statutory notice of deficiency dated March 8, 2013, respondent determined deficiencies in petitioners' Federal income tax and accuracy-related penalties pursuant to section 6662(a) for the 2008, 2009, and 2010 taxable years (years at issue) as follows:

| Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|------|-----------|---------------------------------------|
| 2008 | $22,486 | $4,497 |
| 2009 | 300 | 60 |
| 2010 | 7,959 | 1,592 |

After concessions,[2] the issues remaining for decision are whether

---

[1](...continued)
to the nearest dollar.

[2]Petitioners failed to assign error in their petition to respondent's inclusion of their State income tax refunds for the years at issue, partial disallowance of a mortgage interest deduction for 2009 claimed on Schedule A, Itemized Deductions, and full disallowance of a mortgage interest deduction for 2010 claimed on Schedule E, Supplemental Income and Loss. Accordingly, these issues are deemed conceded. See Rule 34(b)(4) (failure to assign error is deemed concession); Funk v. Commissioner, 123 T.C. 213, 215 (2004). Mr. Ballard also conceded the State income tax refunds issue on the record at trial. Respondent conceded the accuracy-related penalty issue for 2009 on the record at trial. Additional issues not discussed herein are computational adjustments based on other adjustments to petitioners' Federal income tax returns.

petitioners[3] (1) are entitled to rental real estate loss deductions they claimed on their Schedules E for the years at issue (over and above the amounts respondent allowed pursuant to section 469(i)) and (2) are liable for accuracy-related penalties for 2008 and 2010. We resolve both issues in favor of respondent.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in California when they timely filed their petition with the Court.

## I. Petitioners and Their Residential Rental Properties

Mr. Ballard and Ms. Pu were married in 2003 and had three children under six years old during the years at issue. During the years at issue Ms. Pu was a homemaker caring for these children; Mr. Ballard was a certified public accountant (C.P.A.). He earned a bachelor's degree in business administration with a concentration in accounting, and a master's degree in taxation. During the years at issue Mr. Ballard attended part time (Saturdays from August to May with a brief break in December) the University of California, Berkeley, for a master's

---

[3]Ms. Pu did not appear in Court at trial, but Mr. Ballard was authorized to speak (and sign the stipulation of facts) for her; and the Court allowed this.

degree in business administration (M.B.A.). He was awarded his M.B.A. in May 2010. During the years at issue Mr. Ballard experienced short periods of unemployment but also worked full time at various technology companies.

Beginning in 1987 Mr. Ballard started acquiring residential rental property. During the years at issue petitioners owned and rented out six properties--five single-family homes in Georgia and one condominium in California.[4] In 2010 petitioners also owned and rented out a seventh property--a single-family home in San Jose, California. Petitioners visited their rental properties in California but did not visit their Georgia rental properties during the years at issue.

Petitioners sought prospective tenants by posting advertisements on Craigslist. They received rent directly from tenants, and Mr. Ballard received maintenance requests from tenants. He hired third-party vendors to make repairs and carry out maintenance on the Georgia properties, which included yard work, rodent control, trash removal, and painting. In petitioners' Georgia rental agreements they designated an agent who would provide keys to tenants, hold apartment showings, perform maintenance, and inspect the properties.

---

[4]Ms. Pu had owned and resided in the condominium before marrying Mr. Ballard.

II.    Petitioners' Joint Federal Income Tax Returns

Petitioners prepared and timely filed (using TurboTax) their Forms 1040, U.S. Individual Income Tax Return, for the years at issue.  As relevant here, they attached Schedules E to each Form 1040, reporting rental income and expenses attributable to their residential rental properties.  On their 2008 Schedules E they claimed loss deductions totaling $91,571.  On their 2009 Schedules E they claimed loss deductions totaling $119,337.  On their 2010 Schedules E they claimed loss deductions totaling $100,646.

Approximately one year after filing their Form 1040 for 2010 petitioners submitted a Form 1040X, Amended U.S. Individual Tax Return, for 2010.  On this form they made adjustments to their adjusted gross income and itemized deductions, causing a decrease in taxable income.  They also substituted on one of the Schedules E which they attached to the Form 1040X a San Jose, California, property with an address different from the one reported on their original return.  On these Schedules E they claimed loss deductions totaling $80,356.

III.    Audit and Determination

Respondent audited petitioners' returns for the years at issue.  During the audit petitioners provided time logs for 2008 which reported 1,669 and 772 hours spent by Mr. Ballard and Ms. Pu, respectively, relative to their residential rental

properties. These logs were not kept contemporaneously; Mr. Ballard created them from his recollection of activities in conjunction with reviewing emails, phone records, receipts, rental applications, and rental agreements. With respect to Ms. Pu's hours in particular, many of them were for nonmanagerial activities, i.e, investor-type activities. Petitioners did not provide time logs for 2009 and 2010 but provided to respondent on the day of trial copies of documents consisting of invoices, receipts, checks, rental applications, rental agreements, and letters. Except to the extent allowed by application of section 469(i), respondent disallowed petitioners' claimed loss deductions for the years at issue because their residential rental activities were passive activities in the context of section 469.

The record includes a completed Civil Penalty Approval Form for the section 6662(a) accuracy-related penalties for the years at issue. The form includes a signature on the line provided on the form for "Group Manager Approval to Assess Penalties Identified Above" dated March 30, 2012, before the issuance of the notice of deficiency.[5]

---

[5]As explained infra pp. 14-18, we are reopening the record to admit the Civil Penalty Approval Form and a declaration of Internal Revenue Service Revenue Agent Teresa Welch insofar as it authenticates the Civil Penalty Approval Form for purposes of Fed. R. Evid. 902(11).

Discussion

I.    Burden of Proof

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed.  Segel v. Commissioner, 89 T.C. 816, 842 (1987).  As relevant here, this burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate claimed loss deductions by maintaining and producing adequate records.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001).  If the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining his Federal income tax liability and meets certain other requirements, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue.  Sec. 7491(a)(1) and (2).

Petitioners allege (only in passing in their answering brief) that the burden of proof should shift to respondent under section 7491(a) because they "responded in good faith to the IRS'[] audit of 2008, and produced mountains of contemporaneous supporting documents."  As discussed infra, the evidence does

not establish that the burden of proof should shift from petitioners to respondent under section 7491(a) as to any issue of fact.

II.    Section 469 Losses From Residential Rental Activities

A taxpayer is allowed deductions for certain business and investment expenses under sections 162 and 212.  Where the taxpayer is an individual, however, section 469 generally disallows any passive activity loss for the taxable year in which the loss is sustained and treats it as a deduction allocable to the same activity for the next taxable year.  Sec. 469(a) and (b).  A "passive activity loss" is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity generally is any activity involving the conduct of a trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  A taxpayer is treated as materially participating in an activity only if his or her involvement in the operations of the activity is regular, continuous, and substantial.  Sec. 469(h)(1).  Rental activity is treated as a per se passive activity, regardless of whether the taxpayer materially participates.  Sec. 469(c)(2), (4).

As relevant here, section 469(c)(7) provides an exception to the rule that a rental activity is per se passive.  The rental activities of a taxpayer in a real property trade or business who meets certain enumerated requirements (a real

estate professional) are not subject to the per se rental activity rule. Sec. 469(c)(7)(A); sec. 1.469-9(b)(6), (c)(1), Income Tax Regs. Rather, the rental activities of a real estate professional are subject to the material participation requirements of section 469(c)(1). See sec. 1.469-9(e)(1), Income Tax Regs.

Petitioners contend that they were real estate professionals during the years at issue. A taxpayer qualifies as a real estate professional if: (1) more than one-half of the personal services performed in trades and businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(i) and (ii). In the case of a joint Federal income tax return, such as here, these two requirements are satisfied if and only if either spouse separately satisfies these requirements; there can be no aggregation of spouses' hours to satisfy the requirements. See sec. 469(c)(7)(B) (flush language); Moss v. Commissioner, 135 T.C. 365, 368-369 (2010).

A taxpayer may establish hours of participation in a real property trade or business by any reasonable means. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). Contemporaneous daily reports are not

required if the taxpayer can establish participation by other reasonable means.  Id.

Reasonable means include "appointment books, calendars, or narrative

summaries" that identify the services performed and "the approximate number of

hours spent performing such services".  Id.  However, this Court has noted

previously that it is not required to accept a postevent "ballpark guesstimate" or

the unverified, undocumented testimony of taxpayers.  See, e.g., Moss v.

Commissioner, 135 T.C. at 368-369; Lum v. Commissioner, T.C. Memo. 2012-

103; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185.

In determining whether Mr. Ballard and Ms. Pu were real estate

professionals during the years at issue, we assume (without deciding) that their

residential rental activities constituted a real property trade or business and that

they both materially participated in this real property trade or business.  However,

even with these favorable assumptions, we find that neither Mr. Ballard nor Ms.

Pu qualified as a real estate professional for any of the years at issue.

Petitioners attempt to show that they were real estate professionals during

the years at issue by relying on Mr. Ballard's testimony at trial,

noncontemporaneous time logs for 2008, and documents for 2009 and 2010

consisting of invoices, receipts, checks, rental applications, rental agreements, and

letters.  The 2008 time logs--one for Mr. Ballard and another for Ms. Pu--list 1,669

and 772 hours of personal time that they respectively purportedly spent relative to their residential rental properties. These logs, which Mr. Ballard created on recollection several years after the fact in connection with the audit of petitioners' returns for the years at issue, were duplicative, and the hours reflected therein were inflated. The log entries were short and did not state with any specificity how the time for each entry was spent. The 2008 time log for Mr. Ballard, for example, indicates that he spent 24 hours on June 14, 2008, doing the following: "[p]ost Internet Ads", "coordinating with new * * * applicants [for one of the Georgia properties] for next year", "coordinate with * * * renters [of one of the Georgia properties] about showing house to prospective tenants", "[s]um/verify checks; deposit ticket; trip to bank to deposit funds", and "analyze cities for real estate investment". During the years at issue, in addition to owning the residential rental properties, Mr. Ballard held full-time positions with various technology companies and was enrolled in an M.B.A. program, attending classes on Saturdays from August to May (with a brief break in December). The 2008 time log for Ms. Pu, for example, contains repeated entries for "operational & financial review"; "detailed review of expenses"; "strategic review, alternative scenarios, recommendations"; "[a]nalyze" and "review" new tenant applications; "review existing insurance/call insurance brokers; shop around for better deals"; "review

lease agreements - look for other (better) examples"; "seek investors - partnership in rental real estate"; and "seek refinancing - contact mortgage brokers/lenders". It is apparent that Ms. Pu, who was a homemaker caring for her and Mr. Ballard's three young children during the years at issue, performed little to no day-to-day management or operations of petitioners' real estate activities. Indeed, these log entries establish that Ms. Pu's activities, if anything, were more akin to those of an investor, and thus do not count towards the 750-hour requirement for the years at issue. See Barniskis v. Commissioner, T.C. Memo. 1999-258, slip op. at 11-12; sec. 1.469-5T(f)(2)(ii), Temporary Income Tax Regs., supra.

We conclude that the 2008 time logs are not trustworthy and decline to rely on them to reach the result petitioners desire. As for the documents petitioners produced for 2009 and 2010, they do not establish how many hours petitioners spent with respect to their residential rental activities. Many of the documents show that petitioners had an agent to handle the day-to-day management of their Georgia residential rental properties and that they hired numerous workers to repair and maintain all of their residential rental properties.

Ms. Pu did not appear in Court at trial. And as for Mr. Ballard's testimony, we find much of it to be incredible, uncorroborated, and self-serving. Under the circumstances, "[a]s we have stated many times before, this Court is not bound to

accept a taxpayer's self-serving, unverified, and undocumented testimony", Shea v. Commissioner, 112 T.C. 183, 189 (1999) (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), and we do not here.

Petitioners have failed to prove they met the requirements set forth in section 469(c)(7)(B) for the years at issue. Accordingly, they were not real estate professionals. We sustain respondent's determination that petitioners' Schedule E rental real estate loss deductions are not, except to the extent provided by section 469(i), allowed for the years at issue.

## III.    Accuracy-Related Penalty

We now address whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2008 and 2010.

Various grounds for the imposition of these penalties are set forth in the notice of deficiency although only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the penalty on more than one ground. Sec. 1.6662-2(c), Income Tax Regs. We need address only respondent's claim that petitioners are liable for accuracy-related penalties for 2008 and 2010 on the ground that petitioners' underpayments of tax for 2008 and 2010 were attributable to substantial understatements of income tax under section 6662(b)(2). For purposes of section

6662(b)(2), an understatement of tax generally means the excess of tax required to be reported on the return over the amount shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is substantial in the case of an individual if it exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1). Petitioners' income tax was understated by $22,846 and $7,959, respectively, for 2008 and 2010. As determined in the notice of deficiency petitioners' understatements of income tax for 2008 and 2010 were substantial.

The Commissioner bears the burden of production with respect to accuracy-related penalties. Sec. 7491(c). Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Higbee v. Commissioner, 116 T.C. at 447. Section 6751(b)(1) provides that "[n]o penalty * * * shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." In Graev v. Commissioner (Graev III), 149 T.C. __, __ (slip op. at 13-14) (Dec. 20, 2017), supplementing and overruling in part Graev v. Commissioner (Graev II), 147 T.C. 460 (2016), we held that the Commissioner's burden of

production under section 7491(c) includes establishing compliance with the supervisory approval requirement of section 6751(b).

Trial of this case was held, and the record was closed, before we vacated in part our decision in Graev II and issued Graev III.  In the light of Graev III, we ordered respondent to file a response addressing the effect of section 6751(b) on this case and directing the Court to any evidence of section 6751(b) supervisory approval in the record, and petitioners to respond.  Respondent was unable to direct the Court to any evidence in the record that satisfies his burden of production with respect to section 6751(b)(1) and filed a motion to reopen the record to offer into evidence (1) the declaration of Ms. Welch, the Internal Revenue Service revenue agent who conducted the examination of petitioners' returns and recommended imposing section 6662(a) accuracy-related penalties for the years at issue and (2) the Civil Penalty Approval Form for the years at issue, dated before the issuance of the notice of deficiency and signed by Lynn Buckley, Ms. Welch's immediate supervisor.  Petitioners objected to the introduction of any additional evidence with respect to the penalties and requested that the Court deny respondent's motion.

Reopening the record for the submission of additional evidence lies within the Court's discretion.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S.

321, 331 (1971); Butler v. Commissioner, 114 T.C. 276, 286-287 (2000); see also Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 363 (9th Cir. 1974) ("[T]he Tax Court's ruling [denying a motion to reopen the record] is not subject to review except upon a demonstration of extraordinary circumstances which reveal a clear abuse of discretion."), aff'g T.C. Memo. 1971-200. We will not grant a motion to reopen the record unless, among other requirements, the evidence relied on is not merely cumulative or impeaching, is material to the issues involved, and probably would change some aspect of the outcome of the case. Butler v. Commissioner, 114 T.C. at 287; see also SEC v. Rogers, 790 F.2d 1450, 1460 (9th Cir. 1986) (explaining that the trial court "should take into account, in considering a motion to hold open the trial record, the character of the additional * * * [evidence] and the effect of granting the motion"), overruled on other grounds by Pinter v. Dahl, 486 U.S. 622 (1988).

In reviewing motions to reopen the record, courts have considered when the moving party knew that a fact was disputed, whether the evidentiary issue was foreseeable, and whether the moving party had reason for the failure to produce the evidence earlier. See, e.g., George v. Commissioner, 844 F.2d 225, 229-230 (5th Cir. 1988) (holding that refusal to reopen the case was not an abuse of discretion because the issue was foreseeable to the taxpayers and the court could

see no excuse for the taxpayers' failure to produce evidence earlier) (and cases cited thereat), aff'g Frink v. Commissioner, T.C. Memo. 1984-669. We also balance the moving party's diligence against the possible prejudice to the nonmoving party. In particular we consider whether reopening the record after trial would prevent the nonmoving party from examining and questioning the evidence as it would have during the proceeding. See, e.g., Estate of Freedman v. Commissioner, T.C. Memo. 2007-61; Megibow v. Commissioner, T.C. Memo. 2004-41.

The evidence that is the subject of respondent's motion would not be cumulative of any evidence in the record and it would not be impeaching material. Respondent bears the burden of production with respect to penalties and would offer the evidence as proof that the requirements of section 6751(b)(1) have been met. The subject evidence is material to the issues involved in the case, and we conclude that the outcome of the case will be changed if we grant respondent's motion.

Petitioners argue that "[i]t is not just to allow [r]espondent * * * to reopen the record now, at such a late date". Petitioners also question the reliability of the Civil Penalty Approval Form. When this case was submitted and the record closed, Graev III had not been issued. We agree with respondent that the Civil

Penalty Approval Form is not cumulative and is material to the penalty issue in this case. We also agree with respondent that the Civil Penalty Approval Form is a record kept in the ordinary course of a business activity and is authenticated by the declaration of Ms. Welch. See Fed. R. Evid. 803(6), 902(11). We will admit the Civil Penalty Approval Form into evidence and the declaration for purposes of authentication under rule 902(11) of the Federal Rules of Evidence. See Clough v. Commissioner, 119 T.C. 183, 190-191 (2002). Respondent has met his burden of production for the accuracy-related penalties for 2008 and 2010.

Since respondent has met his burden, petitioners must come forward with persuasive evidence that the penalties are inappropriate because, for example, they had reasonable cause and acted in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447. The determination whether the taxpayer had reasonable cause and acted in good faith depends upon the pertinent facts and circumstances of a particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. We consider, among other factors, the experience, education, and sophistication of the taxpayer; however, the principal consideration is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see also Higbee v. Commissioner, 116 T.C. at 448. Taking into consideration the taxpayer's experience, education, and sophistication, an honest misunderstanding of fact or law may indicate reasonable

cause and good faith. Higbee v. Commissioner, 116 T.C. at 449 (citing Remy v. Commissioner, T.C. Memo. 1997-72). In addition, reliance on professional advice may indicate reasonable cause and good faith if, in the light of all the facts and circumstances, such reliance was reasonable and the taxpayer acted in good faith. Id. at 448-449.

Petitioners, however, have not presented evidence to show reasonable cause or good faith for their rental real estate loss deductions for 2008 and 2010. They did not provide any testimony that they relied on advice from a tax professional when preparing their Federal income tax returns for those years. They used TurboTax to prepare their returns. This Court has noted that "[t]ax preparation software is only as good as the information one inputs into it." See Bunney v. Commissioner, 114 T.C. 259, 267 (2000). The software does not constitute professional advice which this Court can rely on in a reasonable cause-good faith analysis.

Given Mr. Ballard's experience, knowledge, and education, there is no justification for his misunderstanding of the law. He testified that he has never dealt with tax preparation in his work experience although he is a C.P.A. with a professional degree in taxation. Mr. Ballard has owned residential rental properties for over 10 years. His professional background and real estate

experience make it unreasonable for him to conduct these activities and not properly document the time that was invested into petitioners' residential rental properties. Accordingly, we sustain respondent's determination regarding the accuracy-related penalties for 2008 and 2010.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued and decision will be entered</u>.