# United States Tax Court

T.C. Memo. 2025-38

DEALERS AUTO AUCTION OF SOUTHWEST LLC,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 25033-21L.                    Filed April 28, 2025.

————

*Larry D. Harvey*, for petitioner.

*Steven I. Josephy*, *Gretchen W. Altenburger*, *Patrick A. Greenleaf*, and *Jason D. Saylor*, for respondent.

## MEMORANDUM OPINION

BUCH, *Judge*: Dealers Auto Auction of Southwest, LLC (Dealers Auto), receives cash payments that exceed $10,000, either singly or in related transactions. Such payments are required to be reported on information returns filed with the Commissioner and furnished to the payors. Dealers Auto implemented software to assist it in meeting this reporting requirement. But for reasons not clear on the record, Dealers Auto did not file and furnish all the required information returns. The Commissioner assessed penalties against Dealers Auto for its failure to file and furnish the required information returns for 2016 (year in issue) and then pursued collection of those penalties. Dealers Auto challenged the Commissioner's collection activity and, in doing so, challenged its underlying liability for the penalties, asserting that it had reasonable cause for its failure to file the required information returns. Because Dealers Auto did not prove the cause of the failure to file the information returns or the steps it took to prevent those failures, it did not establish reasonable cause. Decision will be entered for the Commissioner.

**Served 04/28/25**

**[*2]**                                    *Background*

This case was submitted fully stipulated under Rule 122.[1] Dealers Auto is an Arizona limited liability company with its principal place of business in Colorado when it filed its Petition.

I.    *Dealers Auto Compliance History*

Dealers Auto sells automobiles through an auction house in Phoenix, Arizona. In the ordinary course of its business, Dealers Auto receives cash payments for purchases of vehicles and accepts installment payments. These payments made to Dealers Auto sometimes exceed $10,000 either individually or in the aggregate with respect to a series of related payments.

As a recipient of cash payments in excess of $10,000 in the ordinary course of its business, Dealers Auto was aware that it was required to file information returns documenting the receipt of those cash payments. *See* I.R.C. § 6050I. Dealers Auto filed these information returns before the year in issue. It filed these returns by completing Forms 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business.

Dealers Auto has not always complied with its reporting obligations under section 6050I. One such failure occurred in 2014. Dealers Auto failed to satisfy its information reporting obligations, and the Commissioner proposed to assess penalties for failing to file information returns and furnish payee statements. In 2014, the Commissioner determined that Dealers Auto failed to file information returns and furnish payee statements resulting in total penalties of $21,200 under sections 6721 and 6722. As in effect for 2014, section 6721 imposed a $100 penalty for each failure to file Form 8300. Similarly, section 6722 imposed a $100 penalty for each failure to furnish a payee statement. The letter stated that the Commissioner was proposing an assessment of $12,100 for violations of section 6721 and $9,100 for

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are shown in U.S. dollars and rounded to the nearest dollar.

[*3] violations of section 6722, translating to 121 failures to file and 91 failures to furnish.

## II.  *Remedial Actions Taken After 2014*

After learning of its previous failures, Dealers Auto purchased AuctionMaster software from Integrated Auction Solutions (IAS). The record does not show when exactly Dealers Auto purchased the software. The software contained modules for specialized reporting obligations, such as preparing Forms 8300. The record does not show that Dealers Auto purchased the modules for preparing Forms 8300, but we will infer that the software it purchased included the appropriate module.

The record contains promotional materials for AuctionMaster. Although those materials are mostly illegible, they contain testimonials from satisfied customers. AuctionMaster boasts that its software "has been setup [sic], tested in audits and approved for use by the IRS."

The record contains instructions on how to use the software. The single page of instructions states: "The system will fully track cash payments from your customers and print your 8300 forms (Already built in to [sic] the system!!!) at any time upon request." Once information is entered in the system, the user is not required to re-enter it. According to the user manual, the Form 8300 module "works in conjunction with the Counter Checkout utility" which "detects if your customer pays you in cash." The manual continues: "It then checks the rep information to see if the IRS 8300 required information has been entered. If not, you'll be prompted to enter it."

The manual does not indicate that the software automatically files any Forms 8300. As previously noted, the manual states that the software enables a user to print Forms 8300. Separately, the manual describes the Form 8300 function as being able "to print all IRS 8300 forms completed for a period."

## III.  *Failure to File Information Returns for 2016*

The Commissioner determined that Dealers Auto did not meet its section 6050I filing obligations for 2016. One such failure was with respect to filing Forms 8300. Dealers Auto's new system generated 116 Forms 8300 for 2016, but the Commissioner determined that it should have filed an additional 266 Forms 8300. The Commissioner calculated the penalties as follows (per the parties' stipulation):

| [*4] Type of Violation | Penalty |
|---|---|
| 264 Form 8300s more than 30 days late | $68,640.00 |
| 2 Form 8300s less than 30 days late | $100.00 |
| 63 delinquent dealer notifications | $16,380.00 |
| 127 delinquent Runner notifications | $33,020.00 |
| **Total** | **$118,140.00** |

The cause of these failures is unclear. Petitioner's brief states that "there *may have been* a failure with the computer system." (Emphasis added.) The record does not show whether Dealers Auto employees input correct information. The record does not show whether the software was intended to file the information returns automatically or whether the software required intervention by Dealers Auto. The record does not show whether the software failed to create forms or whether it failed to file the forms it created. The record does not show what steps Dealers Auto took to verify that the software was functioning as intended.

Dealers Auto was not immediately aware of its failures. Instead, it was not until the Commissioner began the examination that Dealers Auto became aware of its noncompliance. In response to being contacted for examination, Dealers Auto reached out to IAS.

Dealers Auto learned from IAS that the latter made improvements to its Form 8300 module. Changes were made to the system in an update administered on June 30, 2017 (after the year in issue). The changes included an improved payment aggregation system to better track payments made by a single representative across multiple dealerships. The update also improved tracking of transactions where payments were made in a series of related transactions.

During the examination, Dealers Auto also consulted with the examining agent to better understand its own filing obligations. In response to various questions posed by Dealers Auto, the examining agent explained how payments are to be aggregated for reporting purposes.

Dealers Auto implemented corrective action. Having learned of its failures, Dealers Auto clarified its filing obligations with the Commissioner's examination personnel. Dealers Auto implemented internal controls and filing procedures for Forms 8300. Once implemented, the intent was that Dealers Auto would electronically file Forms 8300.

**[\*5]** The Commissioner proposed penalties for failures to file Forms 8300. In a letter dated July 10, 2018, the Commissioner proposed assessing $118,140 in penalties. The group manager approved the penalty determination. Dealers Auto was not provided the opportunity for a pre-assessment administrative appeal. The Commissioner assessed a portion of the penalties on August 27, 2018, and the remainder of the penalties on September 3, 2018.

## IV. *The Collection Proceeding*

On November 21, 2019, the Commissioner sent Dealers Auto a Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320. Dealers Auto promptly submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153, Dealers Auto did not request a collection alternative.

Dealers Auto challenged the underlying liability as part of its collection proceeding. Specifically, Dealers Auto sought a reasonable cause penalty abatement with respect to its Forms 8300 penalties. In seeking abatement, Dealers Auto argued that it relied on the IAS AuctionMaster software but that the software did not perform as intended.

The Appeals officer considered Dealers Auto's arguments, including its reasonable cause argument, and sustained the lien. The Appeals officer explained that reliance on software is insufficient "without utilizing checks and balances to identify any errors." The Commissioner issued a Notice of Determination, from which Dealers Auto filed a Petition with our Court in which it challenged only its underlying liability for the penalties the Commissioner seeks to collect. The case was submitted fully stipulated pursuant to Rule 122.

*Discussion*

## I. *Jurisdiction and Standard of Review*

This Court is a court of limited jurisdiction, and we may exercise it only to the extent authorized by Congress. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). The Tax Court has exclusive jurisdiction to review appeals from the Commissioner's lien and levy determinations, irrespective of the nature of the underlying liability. *Ginsberg v. Commissioner*, 130 T.C. 88, 92 (2008). A taxpayer's "underlying tax liability" includes all "amounts a taxpayer owes pursuant to the tax laws

**[\*6]** that are the subject of the Commissioner's collection activities." *Callahan v. Commissioner*, 130 T.C. 44, 49 (2008).

The standard of review in collection cases depends upon the issue presented by the case. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000). If the case concerns the taxpayer's underlying liability, the standard is de novo. *Mason v. Commissioner*, 132 T.C. 301, 316 (2009); *Sego*, 114 T.C. at 610. If the underlying liability is not at issue, the Court reviews a Notice of Determination for abuse of discretion. *Sego*, 114 T.C. at 610.

A taxpayer cannot challenge an underlying liability in a collection proceeding if the taxpayer received a Notice of Deficiency or otherwise had an opportunity to dispute the underlying liability. I.R.C. § 6330(c)(2)(B). A prior opportunity can include the opportunity for either judicial consideration or an administrative appeal. *See Lewis v. Commissioner*, 128 T.C. 48, 61 (2007). The failure to file penalty pursuant to section 6721 and the failure to furnish penalty pursuant to section 6722 are assessable penalties that are not subject to preassessment judicial review. *See* I.R.C. § 6671. Dealers Auto did not have the opportunity for an administrative appeal of the underlying liability. Accordingly, we will review the underlying liability de novo.

## II. *Burden of Production*

As a general matter, the burden of production with respect to penalties rests with the Commissioner. Section 7491(c) provides that "the Secretary shall have the burden of production in any court proceeding with respect to the liability of any *individual* for any penalty, addition to tax, or additional amount imposed by this title." (Emphasis added.) In *NT, Inc. v. Commissioner*, 126 T.C. 191, 195 (2006), we held that section 7491(c) did not apply because the taxpayer was a corporation, not an individual. Similarly, in *Dynamo Holdings Ltd. Partnership v. Commissioner*, 150 T.C. 224, 234 (2018), we held that section 7491(c) does not apply to partnership-level proceedings. Given that Dealers Auto is a limited liability company, section 7491(c) does not apply, and it bears the burden of production with respect to the penalties at issue.

## III. *Information Return Filing Obligation and Penalties*

Section 6050I requires information reporting for certain cash transactions. More specifically, section 6050I(a) requires any person who, in connection with their trade or business, receives more than $10,000 in cash in one transaction (or two or more related transactions)

**[\*7]** to file an information return with the Commissioner. That information return identifies the person from whom the cash was received. I.R.C. § 6050I(b)(2). In addition to filing an information return with the Commissioner, section 6050I(e) requires any person filing such an information return to also furnish a statement to the person from whom the cash was received. I.R.C. § 6050I(e)(1). The parties do not dispute that Dealers Auto was required to, and failed to, file and furnish the required information returns.

Failure to file information returns, including those required by section 6050I, can result in a penalty. Section 6721 imposes a $250 penalty for each return a taxpayer fails to file, not to exceed a total of $3 million, for any calendar year. I.R.C. § 6721(a)(1). This amount is subject to an inflation adjustment pursuant to section 6721(f). Where a party makes a correction within 30 days, the penalty is reduced to $50 per failure. I.R.C. § 6721(b)(1)(A).

Section 6722 imposes a $250 penalty for each return a taxpayer fails to furnish, not to exceed a total of $3 million, for any calendar year. I.R.C. § 6722(a). This amount is also subject to an inflation adjustment pursuant to section 6722(f). Where a party makes a correction within 30 days, the penalty is reduced to $50 per failure. I.R.C. § 6722(b)(1)(A).

These penalties do not apply when the failure to file is due to reasonable cause and not willful neglect. I.R.C. § 6724(a). The Code does not define reasonable cause in this context. Treasury Regulation § 301.6724-1(a)(2) provides that a taxpayer has reasonable cause for failure to file information returns when either (1) there are significant mitigating factors with respect to the failure or (2) the failure arose from events beyond the filer's control. To have reasonable cause, the filer must also establish that the filer acted in a responsible manner before and after the failure occurred. *Id.* (flush language).

Significant mitigating factors generally refer to first-time offenses. They include but are not limited to situations in which the filer either was never previously required to file that particular type of return or has an established history of complying with the information reporting requirement with respect to which the failure occurred. *Id.* para. (b). Dealers Auto meets neither of these specific mitigating factors; it had previously filed these forms, and it had previous failures with respect to filing these forms. Dealers Auto has not established a significant mitigating factor.

**[\*8]**   The regulations also identify several events beyond the filer's control that may result in reasonable cause. The list of events is not exhaustive and includes (1) the unavailability of the relevant business records; (2) an undue economic hardship relating to filing on magnetic media; (3) certain actions by the Internal Revenue Service; (4) certain actions of an agent; and (5) certain actions of the payee or any other person providing necessary information with respect to the return or payee statement. *Id.* para. (c)(1).

The parties dispute whether Dealers Auto had reasonable cause. Dealers Auto claims that its failure was due to a software malfunction that was outside its control. The Commissioner contends that reliance on software does not establish reasonable cause. In the alternative, the Commissioner contends that the duty to file an information return is a nondelegable duty.

The Commissioner's blanket arguments are unpersuasive. Software malfunctions can qualify as a failure beyond the filer's control when it is shown the filer used the software correctly. And while there is support for the position that the act of filing is a nondelegable duty, the Commissioner has not identified any authority for the proposition that relying on software to instruct the filer of *when a filing obligation arises* cannot rise to reasonable cause.

A.    *Reliance on Software*

As a general matter, reliance on software is not available as a reasonable cause defense when the taxpayer does not input the correct information. "Tax preparation software is only as good as the information one inputs into it." *Bunney v. Commissioner*, 114 T.C. 259, 267 (2000). In the context of a reasonable cause defense to accuracy-related penalties, we have previously held that "software does not constitute professional advice for which this Court can rely in a reasonable cause/good faith analysis." *Dasent v. Commissioner*, T.C. Memo. 2018-202, at \*23. *But see Morales v. Commissioner*, T.C. Memo. 2012-341, at \*7 n.2 (noting that reliance on tax preparation software might be sufficient to avoid a penalty where the taxpayer "has provided evidence demonstrating a programming flaw or an instructional error"), *aff'd*, 633 F. App'x 884 (9th Cir. 2015).

But this case does not involve an accuracy-related penalty, and Treasury Regulation § 301.6724-1(c)(1) does not preclude a finding that a software malfunction could be a failure beyond the filer's control. The

**[*9]** regulation's only mention of technology-related failures is "filing on magnetic media." Treas. Reg. § 301.6724-1(c)(1)(ii). While magnetic media is not involved here, this regulation makes clear that a technological failure may be sufficient to give rise to reasonable cause. The Commissioner acknowledges in his internal guidance that failures related to software and hardware can be failures beyond the filer's control for purposes of the reasonable cause defense. *See, e.g.*, Internal Revenue Manual 20.1.7.12.1(24) (Dec. 16, 2022). The Commissioner's Internal Revenue Manual lists "relied upon an internal computer system that encountered major hardware and/or software problems" amongst failures beyond the filer's control for purposes of the reasonable cause defense to failure to file an information return. *Id.*

Thus, the question is whether Dealers Auto reasonably relied on this software. To answer that question, we must determine whether Dealers Auto used it correctly but nevertheless experienced a software error that unforeseeably delayed its information return filing.

B.    *Nondelegation Doctrine*

The Commissioner argues that, even if Dealers Auto relied on software, it would not qualify for reasonable cause because the duty to file information returns is not delegable. *See United States v. Boyle*, 469 U.S. 241 (1985). In *Boyle*, 469 U.S. at 252, the Supreme Court held: "The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." But the Supreme Court also noted: "Courts have frequently held that 'reasonable cause' is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken." *Boyle*, 469 U.S. at 250.

To the extent *Boyle* is applicable to the reasonable cause defense under section 6724, it does not preclude the application of reasonable cause when the filer is misadvised about the need to file a return. Dealers Auto does not argue that it delegated to the software the obligation to file the required information returns. Instead, Dealers Auto argues that the software malfunctioned by failing to notify it that the returns needed to be filed. *Boyle* is inapposite.

**[*10]**  C.    *Failure of Proof*

Dealers Auto failed to establish reasonable cause for at least two reasons. Dealers Auto failed to establish that the software failed to perform as intended. Further, Dealers Auto failed to establish that it had adequate controls in place to identify noncompliance.

1.    *Software Failure*

Dealers Auto failed to establish that there was a software failure. As a starting point, it is unclear from the record how the software is alleged to have failed. The instructions for the software suggest that the software prepared Forms 8300 for printing, but Dealers Auto asserts that the software files the forms on the user's behalf. It is unclear whether the supposed failure was a failure to create the required forms or a failure to file them. As for the software, communications between Dealers Auto and IAS make clear that IAS made updates to its software. But those communications refer to "improved" features; nothing in the record establishes that the software was failing to perform as intended.

2.    *Responsible Behavior Before and After Failure*

Even assuming Dealers Auto met its burden to show a failure beyond the filer's control, the record does not support a finding that Dealers Auto acted reasonably before or after the failure. For example, Dealers Auto did not establish that it was correctly using the software or that data was being entered correctly into the system. While it is not necessary to show that Dealers Auto made every data entry correctly, the record offers the Court no insight as to Dealers Auto's installation, training, or use of the software.

Similarly, Dealers Auto did not establish that it took reasonable steps to foster compliance. Dealers Auto argues that it reasonably believed the software was working as intended because it was generating some information returns. But the record shows that Dealers Auto software prepared only 116 Forms 8300 in 2016. The record also shows that Dealers Auto was required to file at least 212 Forms 8300 in 2014. That reduction in the number of forms should have placed Dealers Auto on notice that its software was not performing as intended. And Dealers Auto offers no explanation as to why the reduction in the number of forms would have appeared reasonable. Absent any explanation, we are not persuaded that Dealers Auto reasonably relied on its software.

**[\*11]**                                    *Conclusion*

Dealers Auto failed to establish that it had reasonable cause for its failure to file information returns for 2016.

To reflect the foregoing,

*An appropriate decision will be entered.*